1   Anthony T. Falzone (SBN 190845)
    Julie A. Ahrens (SBN 230170)
2   STANFORD LAW SCHOOL CENTER FOR
    INTERNET AND SOCIETY
3   559 Nathan Abbott Way
    Stanford, California 94305-8610
4   Telephone: (650) 736-9050
    Facsimile: (650) 723-4426
5   E-mail: falzone@stanford.edu

6   William F. Abrams (SBN 88805)
    Sheila M. Pierce (SBN 232610)
7   BINGHAM MCCUTCHEN LLP
    1900 University Avenue
8   East Palo Alto, CA  94303-2223
    Telephone:  650.849.4400
9   Facsimile:  650.849.4800
    E-mail:  william.abrams@bingham.com

10
    Attorneys for Plaintiff
11  BRAVE NEW FILMS 501(c)(4)

12

13                          UNITED STATES DISTRICT COURT

14                        NORTHERN DISTRICT OF CALIFORNIA

15                            SAN FRANCISCO DIVISION

16
    BRAVE NEW FILMS 501(C)(4),              No. CV 08-04703 SI
17
                    Plaintiff,             PLAINTIFF BRAVE NEW FILMS'
18         v.                              NOTICE OF MOTION AND MOTION
                                           FOR PARTIAL SUMMARY
19  MICHAEL WEINER aka MICHAEL SAVAGE,      JUDGMENT
    and ORIGINAL TALK RADIO NETWORK,
20  INC.,                                  Date:      April 3, 2009
                                           Time:      9:00 a.m.
21                  Defendants.            Location:  Courtroom 10
                                           Honorable Susan Illston
22

23

24

25

26

27

28
    A/72854891.6                                           CV 08-04703 SI

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on April 3, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10, of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, plaintiff Brave New Films 501(c)(4) will and hereby does move this Court for an order granting it summary judgment and a declaration that Brave New Films' use of defendant Michael Savage's copyrighted material is protected by the Fair Use Doctrine and enjoining Michael Savage and Original Talk Radio Network from further attempts to suppress protected speech regarding Mr. Savage.

This Motion is made on the grounds that there are no genuine issues of material fact that Brave New Films' use of excerpts from Savage's October 29, 2007 broadcast is a fair use. This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the accompanying supporting declarations, the Request for Judicial Notice, the pleadings, files, and records in this action, and on all such other evidence and argument as may be presented by plaintiff at the hearing on this Motion.

DATED: February 17. 2009

Bingham McCutchen LLP

By:        /s/ William F. Abrams
William F. Abrams
Attorneys for Plaintiff
Brave New Films 501(c)(4)

# TABLE OF CONTENTS

                                                                                            Page

I.    RELIEF SOUGHT ..................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED .................................................... 1

III.  INTRODUCTION ..................................................................................................... 1

IV.   BACKGROUND ......................................................................................................... 3

      A.   Savage's Tirade Against Muslims ........................................................... 3

      B.   Savage's Attempts To Silence His Critics ............................................ 3

           1.   Round One:  Savage Sues CAIR And Loses ............................... 3

           2.   Round Two:  OTRN Goes After Brave New Films Asserting
                Infringement Of Savage's Copyrights ........................................ 5

V.    ARGUMENT ............................................................................................................... 7

      A.   Summary Judgment Standard ................................................................... 7

      B.   Declaratory Judgment Standard ............................................................. 8

      C.   Fair Use Protects Brave New Films' Work As A Matter Of Law ......................... 8

           1.   The Purpose And Character Of The Use Weighs Heavily In Favor
                Of Brave New Films Because It Used The Copyrighted Material
                For Criticism And Commentary .............................................. 10

           2.   The Informational Nature Of Savage's Copyrighted Work Favors
                A Finding Of Fair Use ............................................................ 11

           3.   Brave New Films Used A Minor Portion Of The Copyrighted
                Work To Accomplish Its Purpose ........................................ 12

           4.   Brave New Films' Video Has Caused No Cognizable Harm To
                The Potential Market For Or Value Of The Copyrighted Work ............. 13

VI.   CONCLUSION ......................................................................................................... 14

PLAINTIFF BRAVE NEW FILMS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 7, 8

*Beyene v. Coleman Sec. Serv., Inc.*,
854 F.2d 1179 (9th Cir. 1988) .................................................................................. 7

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
213 F.3d 474 (9th Cir. 2000) .................................................................................... 7

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ..................................................................................... passim

*Eldred v. Ashcroft*,
537 U.S. 186 (2003) ................................................................................................ 9

*Elvis Presley Enter. v. Passport Video*,
357 F.3d 896 (9th Cir. 2003) ................................................................................... 9

*Eureka Fed. Sav. And Loan Ass'n v. American Cas. Co. of Reading, Pa.*,
873 F. 2d 229 (9th Cir. 1989) .................................................................................. 8

*Fisher v. Dees*,
794 F.2d 432 (9th Cir.1986) .................................................................................. 10

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ......................................................................................... 10, 12

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
796 F.2d 1148 (9th Cir. 1986) ........................................................................... 10, 14

*L.A. News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998) ................................................................................ 12

*Leadsinger, Inc., v. BMG Music Publ'g.*,
512 F.3d 522 (9th Cir. 2008) ............................................................................... 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................................... 8

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ............................................................................................... 8

*Nat'l Ass'n of Gov't Employees v. BUCI Television, Inc.*,
118 F. Supp. 2d 126 (D. Mass. 2000) ........................................................... 12

*NXIVM Corp. v. Ross Institute*,
364 F.3d 471 (2nd Cir. 2004) ................................................................. 9, 10

*Savage v. Council on American-Islamic Relations, Inc.*,
No. 3:07-cv-06076-SI, Docket No. 6 ............................................................ 4

*Wall Data Inc. v. L.A. County Sheriff's Dept.*,
447 F.3d 769 (9th Cir. 2006) .................................................................... 11


**STATUTES**

17 U.S.C. § 107(1) ................................................................................ 10

17 U.S.C. § 107(2) ................................................................................ 11

17 U.S.C. § 107(3) ................................................................................ 12

17 U.S.C. § 107(4) ................................................................................ 13

17 U.S.C. § 512(f) ................................................................................. 7

Section 107 of the Copyright Act of 1976 ................................................... 9, 10


**OTHER AUTHORITIES**

Fed.R.Civ.P. 56(c) .................................................................................. 7

Fed.R.Civ.P. 56(e)(2) .............................................................................. 7

PLAINTIFF BRAVE NEW FILMS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.    RELIEF SOUGHT

Brave New Films moves this Court for summary judgment and an Order: (1) declaring that Brave New Films' use of excerpts from the October 29, 2007 broadcast of *The Michael Savage Show* is a fair use; and (2) enjoining defendants Original Talk Radio Network and Michael Savage from threatening or bringing legal action against Brave New Films relating to the fair use of the Video.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether Brave New Films is entitled to a declaration that its use of excerpts from Savage's October 29, 2007 broadcast of *The Savage Nation* is a fair use.

2. Whether Savage and Original Talk Radio Network should be enjoined from any further attempts to bring legal action against Brave New Films relating to the Video.

## III.    INTRODUCTION

This is the second lawsuit arising out of attempts by nationally-syndicated radio host Michael Savage ("Savage") to silence criticism of him, and the anti-Muslim comments he made on his October 29, 2007 radio show. During that show, Savage went on an extended tirade against Muslims, Islam and the Quran during which he (among other things) declared the Quran to be "a book of hate," denigrated Muslims as "throwbacks" who should be deported "without due process," and urged his listeners to confront Muslims publicly: "Speak it out at the supermarket! Tell them what you think of Islam. Tell them what you think of Muslims. Tell them what you think of these things." These remarks drew sharp criticism from Muslims and many others, which Savage and his radio network have twice tried to silence by the ostensible enforcement of Savage's copyrights.

The first time around, Savage sued the Council on American-Islamic Relations ("CAIR") for copyright infringement after CAIR posted a detailed critique of Savage's comments and around four minutes of audio excerpts documenting them. The Court dismissed that claim in July 2008 on CAIR's motion for judgment on the pleadings, holding that CAIR's use of excerpts from Mr. Savage's show for the purpose of documenting and critiquing his statements was protected by the Fair Use Doctrine as a matter of law.

1        Approximately three months later, Savage's radio network, Defendant Original

2    Talk Radio Network, Inc. ("OTRN"), took aim at still more criticism of Savage by Brave New

3    Films.  Brave New Films had created its own video entitled "Michael Savage Hates Muslims"

4    (the "Video") and posted that video on its YouTube channel.  Much like the CAIR video, Brave

5    New Films' Video documented Savage's tirade using roughly one minute of excerpts from his

6    October 29 show, and urged viewers to take action in protest of Savage's comments.  In October

7    2008, OTRN delivered a takedown notice to YouTube pursuant to the Digital Millennium

8    Copyright Act ("DMCA"), contending that the Video infringed the copyrights in the October 29,

9    2007 broadcast, which are owned by Savage.  As a result of that takedown notice, YouTube

10    removed not only "Michael Savage Hates Muslims" from Brave New Films' channel, but

11    disabled Brave New Films' entire channel at a critical time in the presidential election cycle,

12    rendering unavailable a large number of videos that expressed important political views, and just

13    as Brave New Films ran a full-page ad in the New York Times.  While the channel was restored

14    in less than a day following a quick response by Brave New Films' attorneys, the "Michael

15    Savage Hates Muslims" video was removed for eighteen days and restored following Brave New

16    Films' submission of a DMCA counter-notice to YouTube denying any infringement of Savage's

17    rights.

18        Following the removal of its content from YouTube, Brave New Films initiated

19    this action for declaratory relief and damages pursuant to the DMCA.  Like CAIR's video,

20    "Michael Savage Hates Muslims" is protected by the Fair Use Doctrine as a matter of law.  That

21    doctrine protects against what Savage and OTRN have tried to do here for a second time – assert

22    Savage's copyrights against those who seek to criticize him and the views he expressed.  The

23    plain and undisputed facts establish that "Michael Savage Hates Muslims" is protected by the

24    First Amendment and does not infringe Savage's copyrights.  The Court should therefore grant

25    summary adjudication in favor of Brave New Films on its claim for declaratory judgment, and

26    enter an order declaring that Brave New Films is protected by the Fair Use Doctrine and

27    enjoining Savage and OTRN from any further legal action relating to the fair use of the Video.

28

1    IV.    **BACKGROUND**

2          A.    **Savage's Tirade Against Muslims**

3                Savage is the host of *The Savage Nation*, a nationally syndicated radio program.

4    On his October 29, 2007 radio program, Savage went on a tirade against Muslims and Islam, at

5    various times attacking Islam as a religion of hate and slavery and urging listeners to confront

6    Muslims at the grocery store.  He said:

7                I don't want to hear one more word about Islam.  Take your
                 religion and shove it up your behind.  I'm sick of you. …
8
                 Your Bible has been revised several times.  The Jewish Bible has
9                been revised several times.  Not the Quran though.  They still live
                 in the 7th Century.  ... What kind of world are you living in that you
10               let them in here with that throw back document in their hand,
                 which is a book of hate.  Don't tell me I need reeducation.  They
11               need deportation.  …

12               Throwback bastards.  I'm so sick of them.  I'm so sick of the
                 brainwashing about Islam and Muslims and the Quran. [Yells]
13               Shove it! Shove it all! I'm sick of it! …

14               These throwbacks think they're better than you underneath it all.
                 And 90% of them are on welfare. …
15
                 It's time to stop hiding behind your pillow.  [Yells] Speak it out at
16               the supermarket! Tell them what you think of Islam.  Tell them
                 what you think of Muslims.  Tell them what you think of these
17               things.  Stop hiding what you feel.  Say it to everybody that you
                 meet.  Let them prove it's a religion of peace!  Say it on the
18               supermarket line, and don't care what stares you get from those
                 dumb idiots who are checking out behind you with their Cracker
19               Jacks.  Say it to everybody you meet wherever you go.  …

20               Make no mistake about it, the Quran is not a document of freedom.
                 The Quran is a document of slavery and chattel.  It teaches you that
21               you are a slave.

22          *See* Request For Judicial Notice In Support of Plaintiff Brave New Films 501(c)(4)'s
            Motion For Partial Summary Judgment ("RJN"), Exs. B at 3:3-4:8, C at 2:8-14.
23
            B.    **Savage's Attempts To Silence His Critics**
24
                 1.    **Round One:  Savage Sues CAIR And Loses**
25
                       Savage's comments drew strong backlash from the Muslim community and well
26
     beyond.  The Council on American-Islamic Relations ("CAIR") posted a detailed critique of
27
     Savage's anti-Muslim remarks, entitled "National Radio Host Goes On Anti-Muslim Tirade."
28

PLAINTIFF BRAVE NEW FILMS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    RJN, Ex. C at 2:14-16.  In connection with that critique, CAIR posted approximately four

2    minutes of excerpts from his show, documenting the statements quoted above and the manner in

3    which Savage made them.  *Id.*, Exs. C at 2:16-18, F, G.

4            Shortly after that, Savage sued CAIR in this Court.  In a twenty-three page

5    complaint, Savage accused CAIR of infringing his copyrights by posting excerpts of his show in

6    connection with its criticism of him, and went on to launch a wide-ranging and meandering

7    attack on CAIR, accusing it of participating in a conspiracy to silence anti-Muslim speech, being

8    an agent of foreign terrorists, and participating in a conspiracy to commit murder through

9    terrorist acts.[1]  *Id.*, Ex. A.  CAIR answered Savage's complaint and moved for judgment on the

10   pleadings as to all claims against it.  *See* RJN, Ex. B.  On July 25, 2008, this Court granted

11   CAIR's motion and dismissed Savage's copyright infringement claim without leave to amend,

12   holding CAIR's use of excerpts from Savage's show for the purpose of documenting and

13   criticizing his remarks was fair use as a matter of law.  *Id.*, Ex. C.  On August 15, 2008, the

14   Court dismissed Savage's complaint with prejudice.  *Id.*, Ex. D.

15           This Court found that the majority of the four fair use factors, including the most

16   important factors, favored CAIR.  As for the first factor, this Court found that the purpose and

17   character of CAIR's use of the limited excerpts from the radio show was to publicly criticize the

18   anti-Muslim message of those excerpts, and that use of the actual audio excerpts was reasonable

19   because they "reaffirmed the authenticity of the criticized statements and provided the audience

20   with the tone and manner in which [Savage] made the statements."  *Id.*, Ex. C at 8:11-12.  On the

21   second factor – the nature of the copyrighted work – this Court recognized that Savage's call-in

22   radio talk show is likely more informational than creative.  *Id.* at 8:18-19.  But in ruling on

23   CAIR's motion to dismiss, the Court was required to assume the truth of Savage's allegation that

24   his show was creative, and therefore found the second factor weighed slightly in Savage's favor.

25   _____

26   [1] Savage filed his complaint on December 3, 2007.  Savage filed a First Amended Complaint on
     December 25, 2007, at which time he added a RICO claim and additional defendants.  *Savage v.*
27   *Council on American-Islamic Relations, Inc.*, No. 3:07-cv-06076-SI, Docket No. 6.  On February
     14, 2008, Savage filed a Second Amended Complaint.  *Id.*, No. 18.

28

1    *Id.* at 9:9-11.  Evaluating the amount and substantiality of the portion of the work used under the

2    third fair use factor, this Court found that CAIR's use of four minutes of Savage's two-hour

3    radio program was a small amount that was reasonably necessary to convey CAIR's criticisms of

4    Savage's statements.  *Id.* at 10:19-11:5.  Finally, analyzing the effect of CAIR's use on the

5    potential market for or value of the copyrighted work, this Court held that this factor strongly

6    favored CAIR.  *Id.* at 13:2-4.  The Court noted that Savage made no allegation that he "currently

7    has, or ever had, any kind of market for the copyrighted work at issue outside its airing on the

8    October 29, 2007 radio show.  Further, he does not allege any attempts or plans to sell or license

9    the material or derivatives thereof."  *Id.* at 12:4-6.  The only alleged market harm was caused by

10   CAIR's criticism and this is not a damage the law recognizes.  The Court made clear that CAIR's

11   use of the audio clips to criticize Savage serves a different function than the original work and

12   this transformative use could not supersede the original as a market substitute.  *Id.* at 12:19-13:4.

13              **2.      Round Two:  OTRN Goes After Brave New Films
                          Asserting Infringement Of Savage's Copyrights**
14

15          CAIR was not the only organization unhappy about Savage's anti-Muslim

16   remarks.  In January 2008, Brave New Films created the Video and posted it on the Brave New

17   Films' website.  Declaration of James Gilliam In Support of Plaintiff Brave New Films

18   501(c)(4)'s Motion For Partial Summary Judgment ("Gilliam Decl.") at ¶ 2.  Brave New Films

19   also posted the Video on its YouTube channel, which includes hundreds of other Brave New

20   Films videos, nearly all focusing on politics and social issues.  *Id.* at ¶ 3.  Altogether, Brave New

21   Films videos have been viewed millions of times on YouTube.  *Id.* at ¶ 4.  Much like CAIR's

22   criticism of Savage, Brave New Films' Video features excerpts from Savage's October 29, 2007

23   show, lists several of his advertisers, and urges the viewer to speak out against Savage and help

24   "fight the bully" at www.nosavage.org.  *Id.* at ¶ 5; *see also* Brave New Films' Complaint For

25   Declaratory Judgment and Damages at ¶ 17, Ex. B.  Since it was posted on YouTube, "Michael

26   Savage Hates Muslims" has been viewed more than 150,000 times.  Gilliam Decl. at ¶ 7.

27          On September 29, 2008, about two months after this Court dismissed Savage's

28   copyright claim against CAIR on fair use grounds, attorneys for Savage's radio network

1  delivered a letter to YouTube, Inc. ("YouTube"), addressed to YouTube's "DMCA Complaints"

2  department.  *Id.* at ¶ 8; *see also* Defendant Michael Weiner aka Michael Savage's Notice of

3  Motion and Motion to Dismiss ("MTD") at 2:10-18, Ex. A.  In that letter, attorney Carter Glahn

4  asserted under penalty of perjury that his firm, Severaid & Glahn, PC, represented the owner of

5  exclusive rights in content from *The Michael Savage Show*.  MTD at Ex. A.  Savage is the

6  registered owner of the copyright to the October 29, 2007 broadcast of *The Michael Savage*

7  *Show*.  RJN, Ex. E.  Mr. Glahn stated that his office represented OTRN with regards to the

8  infringement of certain specified material.  *Id.*  Mr. Glahn demanded that YouTube immediately

9  remove "Michael Savage Hates Muslims," and 258 other videos that OTRN asserted were

10  infringing its "exclusive rights" of "publication[], broadcast[], and/or reproduction[]."  *Id.*

11       Upon receiving OTRN's letter, YouTube disabled access to the Video and also

12  disabled access to Brave New Films' entire YouTube channel.  Gilliam Decl. at ¶ 9.  This

13  occurred at approximately 9 p.m. on October 2, 2008 – a critical time for Brave New Films,

14  because among other things, Brave New Films is very active in national politics.  *Id.* at ¶ 10.  It

15  was running a full-page ad the next morning in the New York Times calling for presidential

16  candidate Senator John McCain to make a full and public release of his health records.  *Id.*

17  While Brave New Films' lawyers were successful in convincing YouTube to restore Brave New

18  Films' channel the following afternoon, the entire channel was down as the New York Times

19  was being delivered to customers across the country, particularly on the east coast.  *Id.* at ¶ 11.

20       On October 3, 2008, Brave New Films submitted a counter-notice to YouTube,

21  explaining that the Video had been taken down in error.  *Id.* at ¶ 12, Ex. A.  Nonetheless, the

22  Video remained inaccessible on YouTube for eighteen days, until it was restored pursuant to

23  YouTube's policies on October 20, 2008.  *Id.* at ¶ 13.

24       In light of OTRN's assertion that the Video infringes copyrights in Savage's

25  show, and upon determining that Savage is the registered owner of the copyrights in his October

26  29, 2007 broadcast, Brave New Films filed this action for declaratory judgment against OTRN

27  and Savage, seeking a judgment from the Court holding "Michael Savage Hates Muslims" does

28  not infringe any copyrights belonging to Savage or OTRN.  The facts underlying this claim are

1   undisputed.  Indeed, they are not materially different from the facts underlying Savage's

2   copyright claim against CAIR, and Brave New Films is entitled to judgment on the same

3   grounds.  Brave New Films therefore moves for summary adjudication of its declaratory

4   judgment claim on the ground the Fair Use Doctrine protects its use of the audio clips from

5   Savage's radio talk show.[2]

6   **V.      ARGUMENT**

7           **A.      Summary Judgment Standard**

8                   Summary judgment is proper "if the pleadings, the discovery and disclosure

9   materials on file, and any affidavits show that there is no genuine issue as to any material fact

10  and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

11                  "When the party moving for summary judgment would bear the burden of proof

12  at trial, it must come forward with evidence which would entitle it to a directed verdict if the

13  evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of

14  establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R.*

15  *Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

16  (citations omitted).

17                  The burden then shifts to the nonmoving party to show that summary judgment is

18  not appropriate.  *Id.* (citation omitted).  The adverse party "may not rely merely on allegations or

19  denials in its own pleadings; rather, its response must--by affidavits or as otherwise provided in

20  this rule--set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

21  Summary judgment will be entered against the non-moving party if that party does not present

22  such specific facts.  *Id.*  Only admissible evidence may be considered in deciding a motion for

23  summary judgment.  *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.

24  1988).  Facts are only material if they could affect the outcome of the suit under the governing

25  substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court

26  _____

27  [2] If the Court grants Brave New Films' declaratory relief claim, Brave New Films still has a
    claim against Defendants for damages under 17 U.S.C. § 512(f).

28

1    should draw all reasonable inferences in favor of the non-moving party, but the non-moving

2    party must come forward with more than "the mere existence of a scintilla of evidence." *Id*. at

3    252, 255.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to

4    find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co.,*

5    *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

6           **B.      Declaratory Judgment Standard**

7                  This action was filed in response to Defendants' assertion that Brave New Films'

8    Video infringed Savage's copyrighted material by issuing an improper takedown notice.  This

9    Court, therefore, has subject matter jurisdiction to issue a declaratory judgment regarding the

10   parties' legal rights as they pertain to the copyrighted material.  *See MedImmune, Inc. v.*

11   *Genentech, Inc.,* 549 U.S. 118, 127 (2007) (holding that declaratory relief is proper where "the

12   facts alleged, under all the circumstances, show that there is a substantial controversy, between

13   the parties having adverse legal interests, of sufficient immediacy and reality to warrant the

14   issuance of a declaratory judgment").

15                  Declaratory relief is proper here because it will not only clarify and settle the legal

16   relations between the parties, but it will also provide Brave New Films relief from the

17   uncertainty, insecurity and controversy giving rise to the proceeding.  *See Eureka Fed. Sav. And*

18   *Loan Ass'n v. American Cas. Co. of Reading, Pa.*, 873 F. 2d 229, 231 (9th Cir. 1989).  Without a

19   declaration from the Court stating that its use of Savage's October 29, 2007 broadcast is

20   protected by the Fair Use Doctrine, Brave New Films will continue under a cloud of uncertainty

21   and insecurity that at any time Savage can issue another takedown notice or file a lawsuit.  Only

22   a declaration from the Court can settle this uncertainty.

23           **C.      Fair Use Protects Brave New Films' Work As A Matter Of**
24                   **Law**

25                  OTRN and Savage submitted a takedown notice to YouTube asserting that Brave

     New Films' video "Michael Savage Hates Muslims" violates their exclusive rights of
26
     publication, broadcast, and reproduction.  MTD, Ex. A.  Savage is the registered owner of the
27
     copyrights in the October 29, 2007 broadcast of *The Savage Nation*, the source of the audio
28

1    content from Savage's show used in the Video.  RJN, Ex. E.  As this Court held in Savage's

2    copyright lawsuit against CAIR, the use of approximately one minute of excerpts from Savage's

3    two-hour radio program to demonstrate and criticize Savage's overtly-hostile, intolerant, anti-

4    Muslim views is not an infringement of any of exclusive rights because it is protected by the Fair

5    Use Doctrine as a matter of law.  Summary judgment should therefore be entered in favor of

6    Brave New Films on its claim for a declaratory judgment that the Video does not infringe the

7    copyrights of Savage or OTRN.

8            Section 107 of the Copyright Act of 1976 protects the fair use of another's

9    copyrighted work:

10           Notwithstanding the provisions of section 106 and 106A, the fair
             use of a copyrighted work ... for purposes such as criticism [and]
             comment ... is not an infringement of copyright.  In determining
11           whether the use made of a work in any particular case is a fair use
             the factors to be considered shall include:

12
             (1) the purpose and character of the use, including whether such
13           use is of a commercial nature or is for nonprofit educational
             purposes;
14
             (2) the nature of the copyrighted work;
15
             (3) the amount and substantiality of the portion used in relation to
16           the copyrighted work as a whole; and

17           (4) the effect of the use upon the potential market for or value of
             the copyrighted work.
18

19   17 U.S.C. § 107 (2005).

20           Fair use places important limits on copyright holders' exclusive rights insofar as

21   they might impede certain forms of free expression.  Indeed, fair use is a "First Amendment

22   safeguard" that "is intended to preserve the values enshrined in the First Amendment."  *Eldred v.*

23   *Ashcroft*, 537 U.S. 186, 219-20 (2003); *Elvis Presley Enter. v. Passport Video*, 357 F.3d 896,

24   898 (9th Cir. 2003).  *See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)

25   (parody and other forms of criticism "can provide social benefit, by shedding light on an earlier

26   work, and, in the process, creating a new one"); *NXIVM Corp. v. Ross Institute*, 364 F.3d 471,

27   482 (2nd Cir. 2004) ("If criticisms on defendants' websites kill the demand for plaintiffs'

28   service, that is the price that, under the First Amendment, must be paid in the open marketplace

1 for ideas.").

2         Fair use is a "mixed question of law and fact." *Harper & Row Publishers, Inc. v.*

3 *Nation Enters.*, 471 U.S. 539, 560 (1985). In cases such as this where "there are no genuine

4 issues of material fact, or if, even after resolving all issues in favor of the opposing party, a

5 reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law

6 whether the challenged use qualifies as fair use of the copyrighted work." *Hustler Magazine,*

7 *Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986); *see, e.g., Fisher v. Dees*, 794

8 F.2d 432, 435-36 (9th Cir.1986) (finding fair use where the operative facts were undisputed or

9 assumed) (affirming that the court is to make fair use judgments, which "are legal in nature");

10 *Leadsinger, Inc., v. BMG Music Publ'g.*, 512 F.3d 522, 530 (9th Cir. 2008).

11         The four non-exclusive factors set out in the Copyright Act guide the fair use

12 inquiry. *See* 17 U.S.C. § 107; *Campbell*, 510 U.S. at 577-78. No one factor is controlling; all

13 must be "weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578.

14 Here, each of the four fair use factors weighs heavily in favor of Brave New Films.

15           **1.**       **The Purpose And Character Of The Use Weighs**
16                         **Heavily In Favor Of Brave New Films Because It Used**
                        **The Copyrighted Material For Criticism And**
17                         **Commentary**

18         The first factor examines the "purpose and character of the use." *See* 17 U.S.C.

19 § 107(1). The focus of this analysis is the "transformative" nature of the accused work. *See*

20 *Campbell*, 510 U.S. at 579. The Copyright Act expressly identifies criticism and commentary as

21 examples of fair use. *See* 17 U.S.C. § 107. A work is presumed to be transformative where it

22 criticizes or comments directly on the copyrighted work. *See, e.g., Campbell*, 510 U.S. at 583

23 (criticism and commentary "traditionally have had a claim to fair use protection."); *NXIVM* 364

24 F.3d at 477 (a strong presumption of transformative purpose arises where defendants use

25 copyrighted work for purpose of criticism or commentary). Moreover, as this Court concluded

26 in the CAIR litigation, there is no question the protection afforded by the fair use doctrine

27 "extends to those with a political purpose, even those engaged in fundraising activities." RJN,

Ex. C at 7:20-22.

28

1    Here there is no dispute that Brave New Films used excerpts from Savage's

2   copyrighted radio broadcast for the transformative purpose of publicly criticizing and

3   commenting on Savage's anti-Muslim statements and point of view.  Brave New Films created

4   the Video and launched the website, www.nosavage.org, to inform the public about Savage's

5   hateful views by showing the Video and providing information about how to contact advertisers

6   and ask them to remove ads from Savage's radio show.  Gilliam Decl. at ¶ 6.  The website also

7   includes information about Savage's retaliatory lawsuit against CAIR and criticizes his attempt

8   to censor CAIR by suing the group for copyright infringement.  *Id.*  Like the video at issue in the

9   CAIR lawsuit, Brave New Films' Video used short audio excerpts from *The Michael Savage*

10  *Show* to directly criticize Savage for the very words he said during his October 29, 2007 show, to

11  denounce his anti-Muslim views, and to draw public attention to Savage's bullying attempts to

12  silence CAIR.  *Id.* at ¶ 5.  Defendants do not dispute these facts.

13    As this Court held in the CAIR litigation, the use of Savage's work to comment

14  on and criticize his statements and views is a transformative use of Savage's copyrighted

15  material:

16          To comment on [Savage's] statements without reference or citation
            to them would not only render [CAIR's] criticism less reliable, but
17          be unfair to [Savage]. Further, it was not unreasonable for [CAIR]
            to provide the actual audio excerpts, since they reaffirmed the
18          authenticity of the criticized statements and provided the audience
            with the tone and manner in which [Savage] made the statements.
19

20  RJN, Ex. C at 8:8-12.  Brave New Films, like CAIR, used Savage's material to criticize and

21  comment on Savage's statements and views.  Thus the first factor weighs heavily in favor of

22  Brave New Films.

23          2.      **The Informational Nature Of Savage's Copyrighted**
                    **Work Favors A Finding Of Fair Use**
24

25    The second fair use factor examines the nature of the copyrighted work at issue.

26  *See* 17 U.S.C. § 107(2).  Under this factor, courts consider creative works "closer to the core of

27  intended copyright protection" than informational works.  *Campbell*, 510 U.S. at 586; *see also*

28  *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 780 (9th Cir. 2006) (same).

1     Moreover, published works, like Savage's radio show, enjoy lesser protection from unauthorized

2 uses than do unpublished works. *See, e.g., Harper & Row*, 471 U.S. at 551.

3         The work at issue here is a talk show about matters of public affairs. *The Michael*

4 *Savage Show* is an informational rather than creative work because it is a forum for Savage and

5 his listeners to comment on matters of public interest. Courts have repeatedly found that such

6 informational works, including newspapers, television news broadcasts, and the content of talk

7 shows are subject to liberal appropriation for fair use purposes. *See, e.g., L.A. News Serv. v.*

8 *Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) ("factual and informational

9 nature" of television news footage weighed in favor of fair use determination); *Nat'l Ass'n of*

10 *Gov't Employees v. BUCI Television, Inc.*, 118 F. Supp. 2d 126, 128-29 (D. Mass. 2000)

11 (reporter's acquisition, alteration, and distribution of videotape of copyrighted talk show

12 program constituted fair use). Here Savage and OTRN cannot rebut the observable fact that

13 Savage's show is an informational work that should be afforded less copyright protection from

14 unauthorized uses.

15         As this Court recognized in the CAIR litigation, "the original work at issue

16 appears to be more informational than creative." RJN, Ex. C at 9:4-5. Indeed, here, unlike in the

17 CAIR case, the Court is considering a summary judgment motion, and it need not accept

18 Savage's unsupported allegation that his show is a creative work. Because Savage and OTRN

19 cannot offer evidence that *The Michael Savage Show* is more creative than informational, the

20 second factor weighs in favor of Brave New Films.

21        **3.**     **Brave New Films Used A Minor Portion Of The**
                          **Copyrighted Work To Accomplish Its Purpose**

22

23         The third factor evaluates "the amount and substantiality of the portion used in

24 relation to the copyright as a whole." 17 U.S.C. § 107(3). While the Court must consider both the

25 quality and quantity of the portion of the copyrighted work that was used, the central question is

26 whether the extent of copying is reasonable in light of its purpose. *See Campbell*, 510 U.S. at

27 586.

28         Brave New Films used the most egregious excerpts of Savage's broadcast to

1    accomplish its purpose of publicizing and criticizing Savage's anti-Muslim views and the

2    intolerance he promotes on his show.  The Video contains precisely the statements of Savage that

3    most clearly demonstrate his hatred of Muslims.  The Video runs a total of one minute and

4    twenty-three seconds, and the audio excerpts from *The Michael Savage Show* play during

5    approximately one minute in the Video.  Gilliam Decl. at ¶ 2.  In that minute, Savage instructs

6    Muslims to "take [their] religion and shove it up [their] behind," urges his listeners to confront

7    Muslims in the "supermarket line" and urges the federal government to deport Muslims.

8    Complaint, Ex. B.  In addition to playing this brief audio clip, the "Michael Savage Hates

9    Muslims" video directs viewers to www.nosavage.org, a website dedicated to exposing and

10    criticizing Savage's views, that lists certain companies that have advertised on Savage Nation,

11    and urges viewers to "do something" about Savage's intolerance.  Gilliam Decl. at ¶ 5.  The one

12    minute of audio used in the Video is a small fraction of the original copyrighted work--the two

13    hour October 29 broadcast--and is very narrowly tailored to Brave New Films' purpose of

14    publicly criticizing Savage and counteracting his bigotry.[3]  Brave New Films' reproduction of

15    this small excerpt of the original work is more than reasonable.  Brave New Films uses

16    significantly less than the four minutes of audio that CAIR used for the same purpose, which this

17    Court held was reasonable in light of CAIR's purpose to criticize Savage.  RJN, Ex. C at 11:4-6.

18    Like CAIR, Brave New Films "used the audio excerpts to comment on and rebut derogatory

19    statements . . . and the amount used in reference to [Savage's] statements was reasonably

20    necessary to convey the extent of [Savage's] comments." *Id*. at 10:2-11.  The third factor thus

21    strongly weighs in favor of Brave New Films.

22        **4.**      **Brave New Films' Video Has Caused No Cognizable**
                 **Harm To The Potential Market For Or Value Of The**
23                  **Copyrighted Work**

24        The fourth factor is "the effect of the use upon the potential market for or value of

25    the copyrighted work." 17 U.S.C. § 107(4).  The Ninth Circuit teaches that "in determining

26

27    [3] Savage registered the October 29, 2007 episode as a whole work.  RJN, Ex. E.  Thus the
copyrighted work to compare here is the entire two hour episode.  *Id*., Ex. C at 10:12-18.

28

1    whether the use has harmed the work's value or market, the courts have focused on whether the

2    infringing use: (1) tends to diminish or prejudice the potential sale of the work; or (2) tends to

3    interfere with the marketability of the work; or (3) fulfills the demand for the original work."

4    *Hustler Magazine*, 796 F.2d at 1155-56 (internal citations and quotations omitted).  But critique

5    or commentary of the original work "that kills demand for the original by force of its criticism,

6    rather than by supplying the demands of the market, does not create a cognizable harm under the

7    Copyright Act."  RJN, Ex. C at 11:14-17 (citing *Campbell*, 510 U.S. at 591-92).  Moreover, a

8    "use that has no demonstrative effect upon the market for, or the value of, the copyrighted work

9    need not be prohibited in order to protect the author's incentive to create."  *Hustler Magazine*,

10   796 F.2d at 1155 (internal quotation and citation omitted).  Fair use protects "copying by others

11   which does not materially impair the marketability of the work which is copied."  *Id*. (internal

12   quotation and citation omitted).

13          Brave New Films' Video cannot affect the market for the original in a way that is

14   cognizable under the fourth factor, that is, by acting as a substitute for it, or superseding its

15   objects.  *See Campbell*, 510 U.S. at 591.  The only conceivable harm Savage and OTRN could

16   claim to have suffered would be lost advertising revenue or listenership or harm to Savage's

17   image.  But any such damage suffered as a result of Brave New Films' criticism is not a harm the

18   law recognizes.  Criticism that decreases demand for the original work does not give rise to a

19   cognizable harm under the Copyright Act.  *Campbell*, 510 U.S. at 591-92.  As this Court found

20   in the CAIR case, "Any potential claims on the market impact of derivative works are barred as a

21   matter of law because 'there is no protectable derivative market for criticism' and impairing such

22   a market by the effectiveness of critical commentary is not relevant under copyright law."  RJN,

23   Ex. C at 12 n.2 (quoting *Campbell*, 510 U.S. at 592-93).  Because Savage and OTRN could not

24   have suffered any legally cognizable market harm to the copyrighted work, the fourth factor

25   greatly favors Brave New Films.

26   **VI.    CONCLUSION**

27          Each step of the fair use analysis strongly favors Brave New Films.  The Video

28   uses copyrighted material for the transformative purpose of criticism and commentary; the

PLAINTIFF BRAVE NEW FILMS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1 copyrighted material is informational, not creative, Brave New Films uses only a small fraction

2 of audio from Savage's show for its purpose, and its use presents no cognizable market harm.

3 Accordingly, Brave New Films is entitled to a declaratory judgment that its Video does not

4 infringe Savage or OTRN's copyrights and is protected by the Fair Use Doctrine as a matter of

5 law and an order enjoining OTRN and Savage from threatening to bring legal action against

6 Brave New Films relating to the Video.

7

8 DATED: February 27, 2009

9 By: _____/s/ William F. Abrams_____
   William F. Abrams (SBN 88805)
10 Sheila M. Pierce (SBN 232610)
   BINGHAM MCCUTCHEN LLP
11 1900 University Avenue
   East Palo Alto, CA 94303-2223
12 Telephone: 650.849.4400
   Facsimile: 650.849.4800
13 E-mail: william.abrams@bingham.com

14 Anthony T. Falzone (SBN 190845)
   Julie A. Ahrens (SBN 230170)
15 STANFORD LAW SCHOOL CENTER FOR
     INTERNET AND SOCIETY
16 559 Nathan Abbott Way
   Stanford, California 94305-8610
17 Telephone: (650) 724-0517
   Facsimile: (650) 723-4426
18 E-mail: falzone@stanford.edu

19 *Attorneys for Plaintiff*
   Brave New Films 501(c)(4)

20

21

22

23

24

25

26

27

28