Benjamin Aaron Shapiro (SBN 254456)
12330 Magnolia Blvd., #114
Valley Village, CA 91607
Telephone: (818)620-0137

Attorney for Defendant
THE ORIGINAL TALK RADIO NETWORK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAVE NEW FILMS 501(c)(4),<br><br>       Plaintiff,<br><br>vs.<br><br>MICHAEL WEINER aka MICHAEL SAVAGE and ORIGINAL TALK RADIO NETWORK, INC.,<br><br>       Defendants | Case No.: CV 08-4703 SI<br><br>**DECLARATION OF RONALD H. SEVERAID IN SUPPORT OF DEFENDANT THE ORIGINAL TALK RADIO NETWORK, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      April 3rd, 2009<br>Time:     9:00 a.m.<br>Location:  Courtroom |

Honorable Susan Illston

I, RONALD H. SEVERAID, hereby declare that:

1.    I am an attorney at law duly licensed to practice before all courts of the State of California..

2.    I am one of the California attorneys for defendant THE ORIGINAL TALK RADIO NETWORK, INC. ("**OTRN**" or "**Defendant**"), and am a member of the law firm of Severaid & Glahn, P.C.

3.    I have personal knowledge of all matters addressed in this declaration, and could testify competently thereto if called upon to do so.

4.    I am also the Executive Vice President of OTRN and now spend most of my office time at the corporate office of OTRN.

1

Dockets.Justia.com

5.    OTRN has produced and syndicated "The Michael Savage Show" (the "**Show**") for approximately eight years.  Defendant MICHAEL WEINER, aka MICHAEL SAVAGE ("**Savage**") serves as the host of the Show for OTRN under contract to OTRN.

6.    OTRN is the holder of the copyrights to the Show and all of the weekday programs of the Show, with one exception.

7.    Prior to September 29, 2008, OTRN formally assigned the copyright for the October 29, 2007 broadcast of the Show (the "**10/29/07 Program**") to Savage.

8.    On or before September 29, 2008, I learned from Benjamin A. Shapiro ("**Shapiro**"), a Southern California attorney that OTRN and I had recently begun working with, that he had discovered the existence of hundreds of videos containing portions of the Show posted on YouTube.

9.    I was aware that OTRN had not granted any authorization to post video containing content from the Show on YouTube, and that such a large archive of searchable videos of content from the Show would be damaging to OTRN's programs of making certain archived content from the Show available to persons under paid membership programs.

10.   As a result, I requested that Shapiro review the content of the Show posted on YouTube and prepare the initial draft of an initial letter to YouTube demanding that it remove content of the Show improperly posted on YouTube's website.

11.   The intent of this letter was to request voluntary removal of material posted improperly in violation of OTRN's copyrights prior to consideration of whether to pursue other actions, including any future possibility of issuing a formal "takedown" notice in accordance with the provisions of 17 U.S.C. §512(f).

12.   After investigating the specifics of the postings further, Shapiro submitted a draft letter and supporting attachment listing 259 videos which he had identified as videos posted on YouTube which should be removed as containing content of the Show posted improperly on YouTube in violation of the copyrights for the Show.

13.   I had, and have, full trust in Shapiro's abilities.  As a result, while I reviewed the text of the proposed letter to determine whether it had the general tenor and substance that I was

2

looking for in terms of personal preference, and then forwarded it to Carter Glahn ("**Glahn**") at my office in Sacramento to finalize it, sign it, and handle any follow up communications with the Northern California recipient of the letter, I had full confidence in the investigation and analysis conducted by Shapiro, and did not consider revisiting his investigation and analysis with respect to the 259 videos that, in my opinion, constituted an incredible aggregate number of postings that literally was becoming an unauthorized library of content taken from the Show.

14. At the time, perhaps because I was in fact stunned to learn of hundreds of potential infringing videos, followed by an incredible 259 itemized infringing videos following further investigation and analysis, containing content from the Show posted improperly on YouTube, the prior assignment of the copyright for the 10/29/07 Program was simply not something I happened to think of in that context, nor did any aspect of legal action between Savage and CAIR (the "**CAIR Case**") come to mind, and it did not occur to me to alert Shapiro to the fact that there was actually one out of thousands of programs of the Show that OTRN no longer claimed the copyright to, nor could it have occurred to me to discuss the wholly separate litigation between Savage and CAIR in the context of this issue.

15. I had a passing familiarity with the CAIR Case, to the extent that I heard references to it from time to time, and occasionally received information concerning it posted on publicly available websites. However, OTRN was not a party to the CAIR Case, and I had no information concerning it beyond this limited scope.

16. As OTRN was proceeding independently with respect to its own copyright claims with respect to the discovery of the 259 infringing videos, neither Savage nor any representative of Savage was notified that a removal demand was being sent to YouTube, and no information concerning the issuance of such demand was sent to Savage or any representative of Savage after the fact. I was the coordinator of all communications relating to that demand, and there were no communications from or to Savage concerning that demand prior to the time that he learned that he had been named as a defendant in this Action.

OTRN'S NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT
Case No. CV 08-4703 SI

17.  There was no contact by the Plaintiff that I am aware of to either OTRN or Severaid & Glahn, P.C. following the issuance of the initial takedown notice to YouTube prior to the commencement of this Action.

18.  Following the commencement of this Action, I learned from reviewing the complaint in this Action that the video at issue apparently involved content from the 10/29/07 Program, and then immediately recognized that, following the assignment of the copyright on that one broadcast out of thousands, OTRN could not have a copyright claim to infringement of that one broadcast.

19.  As OTRN was in fact acting solely for its own account in issuing the demand as to the totality of 259 videos posted on YouTube, it appears that this one video should be outside the scope of that demand.

20.  Had the plaintiff simply contacted OTRN to address their contentions, OTRN would have promptly withdrawn its demand as to that video.  As it was, the complaint in this Action specified that video was in the process of being restored by YouTube, and it was in fact restored by YouTube while OTRN was in the initial stages of review and analysis of the contentions in that complaint.

21.  While the Plaintiff asserts that OTRN was somehow stalking Plaintiff and its one video as some form of joint effort with Savage somehow connected to the CAIR Case, the reality is that this one video simply got lost within the magnitude of the other 258 videos, and, had in fact there been any focus on the particulars of this one video by management of OTRN, as Plaintiff alleges, that one video would not have been included in the YouTube demand – contrary to the implication that the demand was somehow designed to get this video because it dealt with the 10/29/07 Program.  The reality was that neither Shapiro, who was doing the specific review and analysis, nor Glahn, who actually issued the demand to YouTube, had any knowledge of either the copyright assignment on the 10/29/07 Program or the CAIR Case, as there was simply no effort to single out this one video, in contrast to dealing with a virtual library of 259 videos as a collective problem compounded by the sheer number of videos at issue.

4

22. Since OTRN management learned the particulars of this one video, there has been no further claim by OTRN with respect to it, and OTRN does not intend to assert any claim with respect to it.

23. The Plaintiff has separately posted this one video at its own website and OTRN has never made any claim with respect to that individual posting.

24. OTRN did not at any time request, or demand or otherwise suggest that YouTube take any action other than simply remove those specific videos which infringed OTRN's copyright.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed under the laws of the State of California on the 27th day of February, 2009, at Rogue River, Oregon.


_____/s/_____.
RONALD H. SEVERAID

**PROOF OF SERVICE BY E-MAIL**

I am employed in the County of Sacramento, California. I am over the age of eighteen years and not a party to the within case. My business address is 1787 Tribute Rd., Suite D, Sacramento, California 95815. On February 27, 2009, I served the attached

**DECLARATION OF RONALD H. SEVERAID IN SUPPPORT OF DEFENDANT THE ORIGINAL TALK RADIO NETWORK, INC.'S MOTION FOR SUMMARY JUDGMENT**

on the interested parties in the above captioned action by E-mail as follows:

| | |
|---|---|
| Anthony T. Falzone:<br>falzone@stanford.edu, asmith@law.stanford.edu | Christopher Kay Ridder:<br>cridder@stanford.edu |
| Julie Angela Aherns:<br>jaherns@law.stanford.edu | Sheila Marie Pierce:<br>Sheila.pierce@bingham.com,<br>ruth.difalco@bingham.com |
| William Frederick Abrams:<br>William.abrams@bungham.com | |

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on February 27, 2009 at Sacramento, California.

_____/s/_____.

Pam Sauter