1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    BRAVE NEW FILMS 501(C)(4),                      No. C 08-04703 SI

9              Plaintiff,                            **ORDER DENYING DEFENDANT**
        v.                                           **MICHAEL SAVAGE'S MOTION TO**
10                                                   **DISMISS**
     MICHAEL WEINER a/k/a MICHAEL
11   SAVAGE, and ORIGINAL TALK
     RADIO NETWORK, INC.,
12
               Defendant.
13   _____/

14

15         Defendant Michael Weiner, also known as Michael Savage ("Savage") has filed a motion to

16   dismiss plaintiff's complaint.  The motion is scheduled for a hearing on April 17, 2009.  Pursuant to

     Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument,
17
     and hereby VACATES the hearing.  **The case management conference scheduled for the same day**
18
     **remains on calendar.**
19
           Having  considered the arguments of the parties and the papers submitted, and for good cause
20
     shown, the Court hereby DENIES defendant's motion to dismiss.
21

22
                                          **BACKGROUND**[1]
23
           Defendant Savage is a nationally syndicated talk show host who performs under the name
24
     Michael Savage and hosts the talk show program "The Michael Savage Show."  On October 29, 2007,
25
     during the two-hour broadcast of The Michael Savage Show, Savage "went on an anti-Muslim tirade,
26
     attacking Islam and the Quran and denigrating Muslims as 'throwbacks' who should be deported
27

28         [1]  Unless otherwise noted, the following facts are taken from the Complaint.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1 'without due process.'" Shortly after the show aired, the Council for American-Islamic Relations

2 ("CAIR"), a Muslim civil rights group, posted a criticism of Savage on the CAIR website. The posting

3 included more than four minutes of audio excerpts from Savage's October 29, 2007 broadcast. In

4 response to this criticism, Savage filed a lawsuit against CAIR on December 3, 2007 in this Court, Case

5 No. C 07-6076 SI, alleging that CAIR infringed his copyright by posting audio excerpts of the October

6 29 broadcast on the CAIR website. On July 25, 2008, the Court found that CAIR's use of the broadcast

7 constituted fair use and granted CAIR's motion for judgment on the pleadings on this issue. *See* July

8 25 Order, at *13. [C 07-6076 SI, Docket No. 38] In the CAIR case, there was no dispute that the

9 October 29, 2007 broadcast was copyrighted and that Savage owned the copyrighted material. *Id.* at

10 *4. According to the records of the United States Copyright Office, Savage is the registered copyright

11 owner of the October 29, 2007 broadcast of "The Michael Savage Show."

12       The subject of this lawsuit is a video entitled "Michael Savage Hates Muslims" ("the Video")

13 created by plaintiff Brave New Films 501(c)(4) ("Brave New Films"). The Video is one minute and

14 twenty-three seconds long and uses approximately one minute of audio excerpts from the October 29,

15 2007 broadcast. The excerpts quote Savage telling Muslims to "take [their] religion and shove it up

16 [their] behind," urging listeners to confront Muslims in the "supermarket line," and urging the federal

17 government to deport Muslims. It also advertises a website, www.nosavage.com, and "urges viewers

18 to do something about Savage's intolerance." The Video excerpts the same statements from the October

19 29, 2007 broadcast that CAIR used in its criticism.

20       On January 18, 2008, Brave New Films uploaded the Video to the internet site owned by

21 YouTube, Inc. On September 29, 2008, defendant Original Talk Radio Network, Inc. ("OTRN"),

22 through its counsel, contacted YouTube concerning the Video and 258 other videos.[2] *See* Complaint,

23 ex. C ("the September 29 letter"). OTRN syndicates and distributes talk radio content, including The

24 Michael Savage Show, to more than 300 affiliate radio stations. In the September 29 letter, which was

25

26

27

28     [2] The Court notes that almost all the videos have titles that suggest they contain content from
The Michael Savage Show. *See* Complaint, ex. D.

1   directed to YouTube's DMCA Complaints department,[3] OTRN's counsel claimed that its office

2   "represents the owner of an exclusive right infringed by the specified material" and that the videos

3   infringe OTRN's "exclusive rights" of "publication[], broadcast[], and/or reproduction[]."  The letter

4   characterized "The Michael Savage Show" as "OTRN Content."   It demanded that YouTube

5   immediately remove all videos that contained content from "The Michael Savage Show," including the

6   259 videos listed in the letter.  The letter also advised YouTube that "OTRN does not, by this letter,

7   disclaim, release or speak for the separate rights of Michael Savage . . . with respect to any content"

8   posted on YouTube.  *See* Complaint, ex. C.

9        YouTube responded to OTRN's letter by disabling access to the Video and Brave New Films'

10  entire YouTube channel.  It also notified Brave New Films that the Video had been removed because

11  of OTRN's complaint.  *See* Complaint, ex. E.  Brave New Films submitted a DMCA counter-notice to

12  YouTube.  It also filed this lawsuit against Savage and OTRN, (1) seeking a declaratory judgment that

13  the Video does not infringe copyrights held by OTRN or Savage, and (2) alleging misrepresentation in

14  violation of the DMCA, 17 U.S.C. § 512(f).  Now before the Court is Savage's motion to dismiss the

15  action as to him, pursuant to Federal Rule of Civil Procedure 12(b)(6).

16

17                              **LEGAL STANDARD**

18       Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

19  fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss

20  is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

21  evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

22  *grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

23       In answering this question, the Court must assume that the plaintiff's allegations are true and

24  must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d

25  556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are

26  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *St. Clare v. Gilead*

27  

28       [3] The DMCA apparently refers to the Digital Millennium Copyright Act, which is discussed more fully below.

                                    3

*Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

**1.      Agency Relationship Between Savage and OTRN**

Savage argues that he should not be named as a defendant because Brave New Films does not allege any relevant acts or omissions by Savage. Brave New Films contends that it has pled facts sufficient to support an inference that OTRN acted with Savage's ostensible authority in sending the September 2008 letter and thus that OTRN acted as Savage's agent.

"An agent acting within his apparent or ostensible authority binds the principal where the principal has intentionally or negligently allowed others to believe the agent has authority. Section 2317 of the Civil Code of California provides that '[o]stensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.'" *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc*., 213 F.3d 474, 479 (9th Cir. 2000) (citing Cal. Civ. Code § 2317). "An agent's authority may be implied from the circumstances of a particular case and may be proved by circumstantial evidence. However, unless only one conclusion may be drawn, existence of an agency and the extent of an agent's authority is a question of fact . . . ." *Id*. at 479-80 (citation omitted).

The Court finds that Brave New Films has alleged facts sufficient to support the inference that

4

1  OTRN acted with ostensible authority in sending the September 2008 letter. Brave New Films alleges

2  that (1) the Video contains excerpts of the October 29, 2007 broadcast of "The Michael Savage Show,"

3  (2) Savage is the owner of the copyright interests to the broadcast, and (3) OTRN's counsel stated in

4  the September 2008 letter that it represented the owner of an exclusive right in, *inter alia*, the portions

5  of The Michael Savage Show excerpted in the Video. Brave New Films also alleges that OTRN

6  syndicates and distributes Savage's radio show. In addition, almost all of the videos that were the

7  subject of the September 2008 appear to contain content from the Michael Savage Show.

8      Savage responds that he did not give OTRN authority to speak for him and points out that the

9  letter expressly states that "OTRN does not, by this letter, disclaim, release or speak for the separate

10  rights of Michael Savage . . . ." Complaint, ex. C. In light of this disclaimer, Savage contends that

11  "only one conclusion may drawn," *see C.A.R.*, 213 F.3d at 480, from the letter: that OTRN did not act

12  with Savage's ostensible authority. The Court disagrees. The disclaimer is not dispositive. Brave New

13  Films' allegations support the inference that, notwithstanding the disclaimer, Savage intentionally or

14  negligently allowed YouTube to believe that OTRN had authority to act as Savage's agent.

15

16  **2.     Misrepresentation**

17      Brave New Films alleges that defendants violated the DMCA, 17 U.S.C. § 512(f), by

18  misrepresenting in a letter to YouTube that the Video infringed a valid copyright. Section 512(f)

19  provides, in relevant part:

20      Any person who knowingly materially misrepresents under this section–
            (1) that material or activity is infringing

21              . . .
      shall be liable for any damages . . . incurred by the alleged infringer . . . who is injured

22  by such misrepresentation, as the result of the service provider relying upon such
      misrepresentation in removing or disabling access to the material or activity claimed to

23  be infringing . . . .

24  17 U.S.C. § 512(f). Savage argues in his reply brief that the misrepresentation claim fails because (1)

25  Brave New Films does not sufficiently allege that the September 2008 letter was a "notification of

26  claimed infringement," as required by the statute; and (2) the September 2008 letter is privileged.

27

28              **1.     Notification of claimed infringement**

5

Savage argues that the September 2008 letter did not comply with the statutory requirements because it did not include a statement that the sender had a good faith belief that Brave New Films' use of the October 29, 2007 broadcast was unauthorized. An internet service provider's ("ISP") duty to remove material that infringes a copyright is triggered when the ISP receives a written "notification of claimed infringement," *see* 17 U.S.C. § 512(b)(3)(A), which is commonly referred to as a "takedown notice." The DMCA requires that copyright owners include "substantially" the following elements when sending a takedown notice:

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3)(A).

Here, Savage questions only OTRN's compliance with the fifth requirement. His argument fails for at least two reasons. First, OTRN stated in the September 2008 letter under penalty of perjury that the information in the letter was accurate and that YouTube had posted the Video without authorization. *See* Complaint, ex. C. Savage cites no authority for the proposition that these statements do not constitute "substantial" compliance with the DMCA. Second, the requirement of compliance with the factors enumerated in § 512(c)(3)(A) creates a "safe harbor" against liability for ISPs that do not receive statutorily-compliant notice. *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 794 n.4 (9th Cir. 2007). Savage cites no authority for the proposition that he may claim the protection of this safe harbor.

*See id.* (finding that defendant that was not a "service provider" within the scope of the DMCA was not eligible for the safe harbor).

### 2. Litigation Privilege

Savage argues that the September 2008 letter cannot give rise to liability under the DMCA because it is privileged under California law. California protects prelitigation communications under a statutorily granted litigation privilege. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936 (9th Cir. 2006) (citing Cal. Civ. Code § 47(b)). "The principal purpose of the privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Visto Corp. v. Sproqit Technologies, Inc.*, 360 F. Supp. 2d 1064, 1068 (N.D. Cal. 2005). Savage's argument appears to be that if this Court agrees that the September 2008 letter was not a takedown letter under the DMCA, Brave New Films may not amend its complaint to allege a tort claim. In light of the Court's foregoing conclusion that Savage has not established that the September 2008 was not a takedown letter, the Court need not consider this argument.

### CONCLUSION

For the foregoing reasons, and for good cause shown, the Court hereby DENIES defendant Michael Savage's motion to dismiss the complaint.

**IT IS SO ORDERED.**

Dated: April 15, 2009

SUSAN ILLSTON
United States District Judge

7