Benjamin Aaron Shapiro (SBN 254456)
12330 Magnolia Blvd., #114
Valley Village, CA 91607
Telephone: (818) 620-0137

Attorney for Defendant
MICHAEL WEINER, aka MICHAEL SAVAGE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAVE NEW FILMS 501(c)(4),<br><br>       Plaintiff,<br><br>vs.<br><br>MICHAEL WEINER aka MICHAEL SAVAGE and ORIGINAL TALK RADIO NETWORK, INC.,<br><br>       Defendants | Case No.: CV 08-4703 SI<br><br>**DEFENDANT MICHAEL SAVAGE AKA MICHAEL WEINER'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      June 12th, 2009<br>Time:     9:00 a.m.<br>Location:  Courtroom 10<br><br>[filed concurrently with proposed order]<br><br>Honorable Susan Illston |

1

Dockets.Justia.com

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE** that, on June 12, 2009, at 9:00 a.m., in Courtroom 10 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant MICHAEL WEINER aka MICHAEL SAVAGE ("**Defendant**") will, and hereby does, move this Court for an Order granting Summary Judgment in the above-captioned action (this "**Action**") to Defendant against plaintiff BRAVE NEW FILMS 501(c)(4) ("**Plaintiff**") on all of Plaintiff's claims.

    This Motion is made pursuant to Federal Rule of Civil Procedure 56 and Civil L.R. 7-2 and 7-3 on the basis that there is no genuine issue of material fact, and that Defendant is entitled to judgment as a matter of law, as described with more particularity in the attached Memorandum of Points and Authorities.

    This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and other records on file with the Court in this Action, any reply, and any additional argument or evidence which may be presented at or prior to the hearing on this Motion.

Dated: May 8, 2009

                         By    /s/ Benjamin Aaron Shapiro

                         Benjamin Aaron Shapiro
                         Attorney for Defendant MICHAEL
                         WEINER, aka MICHAEL SAVAGE

Introduction …………………………………………………………………………… 5

I. Statement of Undisputed Facts ……………………………………………………... 5

II. Legal Standard for Summary Judgment ……………………………………………. 7

III. The Court Should Grant Summary Judgment As To Defendant Because There Is No

Genuine Issue of Material Fact and Defendant Is Entitled to Judgment as a Matter of Law ……..8

      A.  There Are No Reasonable Grounds To Find That OTRN Acted As Savage's Agent In

           Any Way With Regard To The 09/29/08 Letter……………………………………..8

      B.  Summary Judgment Is Also Warranted Under the Grounds Upon Which OTRN Bases

           OTRN's Summary Judgment Motion ……………………………………………11

      C.  There Is No Ongoing Controversy …………………………………………….22

      D.  The Complaint Is An Attempt To Target Savage …………………………….22

IV. Conclusion ……………………………………………………………………….23

# **TABLE OF AUTHORITIES**

Cases                                                                                                 Page

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ……………………………………………………………....7

*Campbell v. Acuff-Rose Music*
510 U.S. 569 (1994) ………………………………………………………..18, 20

*Harper & Row Publishers, Inc. v. Nation Enterprises*
471 U.S. 538 (1985) ………………………………………………………….18

*American Cas. Co. v. Krieger*
181 F.3d 1113 (9th Cir. 1999) ………………………………………………..10

*C.A.R. Transp. Brokerage v. Darden Rests., Inc.*
213 F.3d 474 (9th Cir. 2000) ………………………………………………..9, 11

*Clark v. City of Lakewood*
259 F.3d 996 (9th Cir. 2001) …………………………………………………22

*Elvis Presley Enters. v. Passport Video*
357 F.3d 896 (9th Cir. 2003) …………………………………………………19

*Leadsinger, Inc. v. BMG Music Publ'g*
512 F.3d 522 (9th Cir. 2008) …………………………………………17, 18, 19

*Los Angeles News Service v. KCAL-TV Channel 9*
108 F.3d 1119 (9th Cir. 1997) ……………………………………………17, 18

*Myers v. Bennett Law Offices*
238 F.3d 1068 (9th Cir. 2001) ……………………………………………...9, 10

*Penthouse International, Ltd., v. Barnes*
792 F.2d 942 (9th Cir. 1986) …………………………………………………..9

*Rossi v. Motion Picture Ass'n of America, Inc.*
391 F.3d 1000 (9th Cir. 2004) ……………………………………….12, 13, 14

*Roy Export Co. Estab. Of Vaduz v. Columbia Broadcasting Sys., Inc.*
672 F.2d 1095 (2d. Cir. 1982) ……………………………………………...19

*Lenz v.Universal Music Corp.*
572 F.Supp.3d 1150 (N.D. Cal 2008) …………………………………13, 14, 16, 17

*Lenz v. Universal Music Corp.*
No. C 07-3783 (N.D. Ca. August 20, 2008) (order denying motion to dismiss) ………..13

*Columbia Outfitting Co. v. Freeman*
36 Cal.2d 216 (1950) …………………………………………………………..9

*South Sacramento Drayage Co. v. Campbell Soup Co.*
220 Cal.App.2d 851 (1963) ………………………………………………...9

*Inglewood Teachers Ass'n v. Public Employment Relations Bd.*

227 Cal. App. 3d 767 (Ct. App. 1991) ……………………………………………9

*Pries v. American Indem. Co.*
220 Cal.App.3d 752 (Ct. App. 1990) ……………………………………………10

*Tsouras v. Southwest Plumbing and Heating*
94 Nev. 748 (Nev., 1978)      ……………………………………………9


<u>Codes and Statutes</u>                                                    <u>Page</u>

17 U.S.C. §512(f) …………………………………………………………12, 21

California Civil Code §2316…………………………………………………9

California Civil Code §2317 …………………………………………………9

California Code of Civil Procedure Section §425.16 …………………………… 5


<u>Other</u>

Federal Rules of Civil Procedure 56 ………………………………………….. 5

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant MICHAEL WEINER aka MICHAEL SAVAGE ("**Savage**" or "**Defendant**") hereby moves in the above-captioned action (this "**Action**"), brought by plaintiff BRAVE NEW FILMS 501(c)(4) ("**Plaintiff**"), for an Order granting Summary Judgment in favor of Defendant (the "**Motion**"), pursuant to FRCP 56, on the grounds that there are no genuine issues of material fact in this Action, and that Defendant is entitled to judgment as a matter of law. In particular, the evidence in this Action confirms that THE ORIGINAL TALK RADIO NETWORK, INC. ("**OTRN**") did not act as agent for Savage in sending the letter to YouTube, dated September 29, 2008, at issue in this Action (the "**09/29/08 Letter**"); a copy of which is attached as **Exhibit "B"** hereto, and that Savage had no involvement whatsoever in the actions giving rise to this Action. In addition, although Savage respectfully notes that his complete lack of involvement in actions taken by OTRN on OTRN's sole behalf should be dispositive, Savage further notes that, for the reasons addressed separately by OTRN in its separate motion for summary judgment in this Action now scheduled for hearing on the same day as the Motion ("**OTRN's Motion**"), and addressed in part below, the actual actions of OTRN at issue in this Action do not entitle Plaintiff to the relief requested by Plaintiff in this Action in any event.

## I.    STATEMENT OF UNDISPUTED FACTS

OTRN produces, syndicates and distributes talk radio content, including without limitation "The Michael Savage Show" (the "**Show**"), which is hosted by Savage.

The particular facts of the issuance of the 09/29/08 Letter are addressed by OTRN in OTRN's Motion. While Defendant does submit that such facts support awarding summary judgment in favor of any defendant in this Action on the same grounds that they support granting summary judgment to OTRN, the Motion will primarily focus on the essential and key facts applicable to Savage in this Action – he simply had nothing whatsoever to do with any of the actions giving rise to this Action, and thus is not accountable for any of such actions, whatever the issues are relating to the separate actions of OTRN. As such, this memorandum to support a

grant of summary judgment in favor of the party which the actions actually at issue in the Action also constitute additional grounds to support granting summary to Savage, although Savage bases the Motion first and foremost on the grounds that he had nothing to do with those actions and is not responsible for the separate actions of OTRN.

Specifically, Savage had no knowledge of OTRN's intention to issue the 09/29/08 Letter, had no knowledge of it prior to the commencement of this Action, and did not have any involvement in it as the declarations of the persons involved in the issuance of the 09/29/08 Letter clearly establish. He did not in any way authorize or request issuance of the 09/29/08 Letter. He was not consulted with respect to the 09/29/08 Letter and had no knowledge of it, or of any communications, notices or demands of any kinds by OTRN to YouTube or Plaintiff, whether with respect to the general subject matter of the 09/29/08 Letter or Plaintiff's specific video at issue in this Action (the "**Video**"). See the accompanying Declaration of Ronald H. Severaid in Support of the Motion ("**Severaid Declaration**"), the accompanying Declaration of Benjamin A. Shapiro in Support of the Motion ("**Shapiro Declaration**") and the accompanying Declaration of Carter Glahn in Support of the Motion ("**Glahn Declaration**").

Plaintiff's complaint in this Action (the "**Complaint**") specifically and maliciously targeted Savage, who was not a party to the 09/29/08 Letter, naming him as a party in this Action and making allegations about Savage's purported "hateful views" (Paragraph 19, line 2) and purported "intolerance" (Paragraph 19, line 28), as well as a baseless and irrelevant allegation about "Savage's retaliatory lawsuit against CAIR" and "his attempts to censor CAIR by suing the group for copyright infringement" (Paragraph 19, lines 4-6). Plaintiff also demonstrated its animus for Savage in its website posting, attached as "**Exhibit A**" hereto, in which Plaintiff labeled Savage "a bully" who "derides, demeans, and distorts those who don't agree with his hate-filled, right-wing agenda, and when that fails, he files lawsuits." The words "he files lawsuits" link to a story about the case of *Savage v. CAIR* previously pending in this Court (the "**CAIR Case**" and/or "**Savage v. CAIR**").

Indeed, Plaintiff's fixation on the CAIR Case and resentment of Savage for the CAIR Case is both perplexing and troubling, as Plaintiff was not a party to the CAIR Case, and no

party involved in the CAIR Case had anything to do with the issuance of the 09/29/08 Letter. The CAIR Case was a separate action, now concluded.

As to Savage, whatever findings are made as to any aspects of the actions of OTRN with respect to the 09/29/08 Letter, the video, YouTube, and/or Plaintiff does not change the fact that such actions were the separate and independent actions of OTRN.

The 09/29/08 Letter was not issued on behalf of Savage, or as some form of extension of claims made by Savage, at any time, in the CAIR Case. To the contrary, there was no communication whatsoever to, from and/or between OTRN and Savage, or any representative of Savage, with respect to the issuance of the 09/29/08 Letter. Savage did not request that it be issued, and OTRN did not seek Savage's advice or authorization concerning the issuance of the 09/29/08 Letter, did not advise Savage or his representative of its intent to have the 09/29/08 Letter issued, and had not even sent an after-the-fact courtesy copy of the 09/29/08 Letter to Savage or any representative of Savage at the time this Action was filed. (See Severaid Declaration, Shapiro Declaration and Glahn Declaration). The 09/29/08 Letter also expressly disclaimed any suggestion that any portion of the 09/29/08 Letter was sent on behalf of Savage.

Only after the filing of this Action became known to Savage were any of Plaintiff's contentions in this Action, or any events at issue in this Action with respect to the 09/29/08 Letter and/or the Video brought to the attention of Savage.

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

Simply alleging a factual dispute is not sufficient to overcome a properly submitted motion for summary judgment, as a responding party must demonstrate a genuine issue of material fact – if evidence "is merely colorable or is not significantly probative summary judgment may be granted." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986). A responding party must show that "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, at 248.

In this Action, Plaintiff alleges many things, including multiple aspersions and personal attacks based on Plaintiff's apparent distaste for certain opinions Plaintiff attributes to Savage, or distaste for actions taken by Savage with respect to third parties for which Plaintiff has no apparent standing.

Savage respectfully submits that such allegations attacking Savage are relevant in this Action only in showing Plaintiff's motives in pursuing Savage in this Action without any proper legal basis for doing so, but do not establish any legal basis for granting relief against Savage in this Action. As to Plaintiff's allegations of agency or other allegations which seek some legal basis to tie Savage to actions of OTRN at issue in this Action, and thus some basis on which to compel Savage to continue as a defendant in this Action being compelled to answer for the actions of a third party as to those matters which are in fact relevant to this Action, Plaintiff has no evidence whatsoever. Indeed, as to such issues, Plaintiff has nothing other than pure and rank speculation and imagination on which to base Plaintiff's allegations of agency or any claim that Savage had anything at all to do with the issuance of the 09/29/08 Letter.

## III. THE COURT SHOULD GRANT SUMMARY JUDGMENT AS TO DEFENDANT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A. There Are No Reasonable Grounds To Find That OTRN Acted As Savage's Agent In Any Way With Regard To The 09/29/08 Letter.

Plaintiff alleges in Paragraph 5 of the Complaint that "On information and belief, OTRN has acted as Savage's agent, and OTRN's actions as alleged herein were done with Savage's knowledge and permission". Such allegation has no basis in fact whatsoever.

Agency relationships are established under California law if an agent is given actual or ostensible authority.

Actual authority is defined under Cal. Civ. Code §2316 as "such as a principal intentionally confers upon the agent, or intentionally, by want of ordinary care, allows the agent to believe himself to possess." Actual authority may therefore be broken down into two categories: (1) express actual authority, in which the principal intentionally confers authority upon the agent, or (2) implied actual authority, in which the principal, either intentionally or

9

negligently, allows the agent to believe himself authorized to act on behalf of the principal. See Columbia Outfitting Co. v. Freeman, 36 Cal.2d 216, 223 (1950). Implied actual authority exists only if the agent believed he was authorized to act on behalf of the principal, and only if such belief was reasonable. See Penthouse International, Ltd. v. Barnes, 792 F.2d 942, 947 (9th Cir. 1986); South Sacramento Drayage Co. v. Campbell Soup Co., 220 Cal.App.2d 851 (1963). OTRN clearly did not have either actual authority or implied actual authority, as explained below.

Ostensible authority is defined under Cal. Civ. Code §2317 as "such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." A party claiming ostensible authority of an agent must prove that the party's "subjective belief" was "objectively reasonable." Myers v. Bennett Law Offices, 238 F.3d 1068, 1073 n.2 (9th Cir. 2001). On a general level, a subjective belief in ostensible authority must not be based on selective evidence; "[t]he party who claims reliance must not have closed his eyes to warnings or inconsistent circumstances." Tsouras v. Southwest Plumbing and Heating, 94 Nev. 748, 751 (Nev., 1978).

Ostensible authority may be implied from the circumstances of a particular case; indicators of ostensible authority include "evidence of a principal transacting business solely through an agent," the principal "knowing that the agent holds himself out as clothed with certain authority but remaining silent," and "the principal's representations to the public in general." C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Ostensible authority "cannot be based solely upon the agent's conduct." Ibid.

On summary judgment, the burden of proof "rests upon the party asserting the existence of the agency and seeking to charge the principal with the representation of the agent." Ibid, quoting Inglewood Teachers Ass'n v. Public Employment Relations Bd., 227 Cal. App. 3d 767 (Ct. App. 1991). To establish a triable issue of fact and survive summary judgment, the non-moving party must establish that the alleged principal, *not the alleged agent*, "intentionally or by want of ordinary care has caused or allowed [the non-moving party] to believe the agent possesses such authority … Ostensible authority must be established through the acts or

declarations of the principal and not the acts or declarations of the agent." American Cas. Co. v. Krieger, 181 F.3d 1113, 1121 (9th Cir., 1999), quoting Pries v. American Indem. Co., 220 Cal. App. 3d 752 (Ct. App. 1990).

The facts here are clear and uncontroverted: OTRN had neither actual nor ostensible authority on behalf of Savage with regard to the 09/29/08 Letter.

In this case, both express actual authority and implied actual authority clearly were not present. Savage never gave OTRN authority to send the 09/29/08 Letter, nor did Benjamin A. Shapiro ("**Counsel**"), Ronald H. Severaid ("**Severaid**") or Carter Glahn ("**Glahn**") believe that Savage had given them such authority or that they had any such authority, as the Severaid Declaration, the Shapiro Declaration, and the Glahn Declaration clearly establish that all three persons involved in the issuance of the 09/29/08 Letter had no involvement with Savage, in any way, with respect to preparation or issuance of the 09/29/08 Letter, or any belief that they were acting on his behalf or had any basis to act on his behalf.

Ostensible authority is also missing here. No action by Savage whatsoever could possibly be construed as granting ostensible authority to act as his agent with respect to the 09/29/08 Letter. In fact, such authority is obviously precluded by the 09/29/08 Letter itself, given that the 09/29/08 Letter expressly specified that it was issued on behalf of OTRN and expressly specified that it was not speaking for Savage. As such, the 09/29/08 Letter itself demonstrates that Plaintiff's alleged belief in OTRN's agency on behalf of Savage was objectively *un*reasonable under *Myers*.

A copy of the 09/29/08 Letter, which was sent by Glahn on behalf of OTRN to YouTube, with regard to the Video attached as "**Exhibit B**" hereto, and is expressly referenced in Paragraph 23 of the Complaint and attached as "Exhibit C" to the Complaint, with a second, full copy of the exhibit to the 09/29/08 Letter attached as "Exhibit D" to the Complaint, and also referenced at Paragraph 23 thereof. The 09/29/08 Letter contains the only factual element of the Complaint directly addressing the involvement of Savage as to the relevant issues posed by Plaintiff's causes of action in this Action. However, as noted above, it does not purport to represent Savage in any way. To the contrary, the 09/29/08 Letter in fact states precisely the

11

opposite: "Please also be advised that OTRN does not, by this letter, disclaim, release or speak for the separate rights of Michael Savage." As a result, the documentation attached by Plaintiff to the Complaint, and referenced therein, demonstrates on its face that the allegation in the Complaint to the effect that OTRN acted as the agent for Savage, or that Savage was somehow a party to the issuance of the 09/29/08 Letter, is simply baseless speculation on Plaintiff's part, and, indeed, that Plaintiff's allegation of an agency relationship between OTRN and Savage, whether actual or ostensible, can only be made by closing one's eyes to the express warnings and inconsistent circumstances set forth on the face of the 09/29/08 Letter itself.

Aside from the clear statement of the 09/29/08 Letter that the 09/29/08 Letter does not "by this letter, disclaim, release or speak for the separate rights of Michael Savage," the 09/29/08 Letter has several other clauses demonstrating that Savage was not a party to the 09/29/08 Letter. Plaintiff utterly misreads or ignores all of them in order to target Savage. "This office has been retained by *The Original Talk Radio Network*" [emphasis added]; and "OTRN is hereby serving formal notice on you that such actions are in violation of *OTRN's exclusive rights* with respect to the OTRN Content" [emphasis added]. These statements demonstrate that OTRN clearly did not speak on behalf of Savage, and did not claim agency on behalf of Savage

Under the criteria enumerated in *C.A.R.*, supra, it is similarly clear that ostensible authority was not present here. Plaintiff cannot point to any facto or evidence establishing any acts or declarations of *Savage* creating ostensible authority in OTRN to act as his agent with respect to the 09/29/08 Letter, because there simply are none. Every possible indicator of ostensible agency authority is missing in this case, for the simple reason that no such ostensible authority existed at any time, and the 09/29/08 Letter expressly disclaimed any suggestion of agency on behalf of Savage.

**B.      Summary Judgment is Also Warranted Under the Grounds Upon Which OTRN Bases OTRN's Summary Judgment Motion.**

Savage clearly had nothing to do with the 09/29/08 Letter. The fact remains, however, that even *had* Savage authorized the 09/29/08 Letter, which he did not, Plaintiff would have no basis for its claims in this Action.

12

Plaintiff makes its claim for damages and attorneys' fees based upon 17 U.S.C. §512(f). That section provides:

> **"Misrepresentations. –** Any person who knowingly materially misrepresents under this section –
>
> (1) that material or activity is infringing, or
> (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it."

The standard is clearly knowing and material misrepresentation. The applicable standard for such misrepresentation is *subjective* bad faith. See Rossi v. Motion Picture Ass'n of America, Inc., 391 F.3d 1000, 1004 (9th Cir. 2004).

In Rossi, the Motion Picture Association of America believed that Michael J. Rossi's website, "internetmovies.com", contained illegal infringement of copyrighted material. The MPAA followed the "notice and takedown" procedures of the DMCA and sent notices to both Rossi and Rossi's internet provider. After receiving notice from his ISP that his website would be shut down, Rossi found a new ISP to host internetmovies.com. According to Rossi, internetmovies.com was offline "[a]pproximately 1 second to 72 hours". Rossi filed action, claiming that the MPAA had not had a "good faith belief" of infringement. The Court found that "the 'good faith belief' requirement in §512(c)(3)(A)(v) encompasses a subjective, rather than objective, standard." See Rossi, 391 F.3d at 1004. More specifically, the Court stated, "A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." See Rossi, 391 F.3d at 1005.

Similarly, in Lenz v. Universal Music Corp., 572 F.Supp.2d 1150 (N.D. Cal 2008), Plaintiff Stephanie Lenz videotaped her young children dancing in her family's kitchen to Prince's "Let's Go Crazy." That video was twenty-nine seconds long, and the music was only barely audible for twenty of those seconds, and the music to which the children were dancing

13

was clearly incidental to the thrust of that video – to show the dancing children. Lenz uploaded that video to YouTube. Universal owned the copyright to "Let's Go Crazy", and issued a takedown notice pursuant to the DMCA. Lenz sent YouTube a DMCA counter-notification and asserted fair use. Lenz demanded that her video be reposted, and YouTube reposted the video approximately six weeks later. Lenz then sued, and Universal filed a motion to dismiss. The Court denied the motion to dismiss, stating that in order for the "good faith" standard of §512(f) to be met for purposes of a motion to dismiss, the owner must evaluate fair use claims. See Lenz, 572 F.Supp.2d 1150.

Lenz denied a *motion to dismiss*, not a motion for summary judgment. In fact, in Lenz, Judge Fogel expressly noted his "considerable doubt" that the plaintiff in Lenz could prove subjective bad faith as required by Rossi. In fact, Judge Fogel went even further, stating that the plaintiff's §512(f) claim and others like it "may be appropriate for summary judgment." In his order denying Universal's motion to dismiss, Fogel stated, ""there are likely to be few [cases] in which a copyright owner's determination that a particular use is not fair use will meet the requisite standard of subjective bad faith required to prevail in an action for misrepresentation under 17 U.S.C. § 512(f)." Lenz v. Universal Music Corp., No. C 07-3783 (N.D. Ca. August 20, 2008) (order denying motion to dismiss).

In this case, the standards expressed by Judge Fogel in Lenz and the Court in Rossi, combined with the factual circumstances underlying this Action, clearly establish the grounds for granting the Motion. As such, it is somewhat difficult to see how Savage can be charged with "knowingly" making a material misrepresentation that he knew absolutely nothing about.

The 09/29/08 Letter did claim that OTRN held the copyright to all material from the Show contained in the 259 videos which were the subject of the 09/29/08 Letter. After the commencement of this Action, the Complaint called attention to the fact that the Video apparently contains content from the October 29, 2007 broadcast of the Show (the "**10/29/07 Broadcast**"). As OTRN had assigned the copyright to the 10/29/07 Broadcast to Savage well prior to the issuance of the 09/29/08 Letter, it does appear that the copyright representation by OTRN was mistaken as to the Video. OTRN's Motion addressed the good faith of that mistake,

but the mistake, and the mistaken representation, were made by OTRN, not by Savage. As a result, OTRN's erroneous representation with respect to the Video, as 1 of 259 videos to which the 09/29/08 Letter related, was not in any event a knowing misrepresentation by Savage, much less a representation made by Savage in bad faith.

Moreover, in the highly unlikely event that Plaintiff could point to some actual basis to find the existence of some triable issue of fact on Plaintiff's allegations that OTRN issued the 09/29/08 Letter as agent for Savage, whether as the copyright holder for the 10/29/07 Broadcast or even a purported triable issue of fact as to the copyright to the Show, generally, Plaintiff still could not show a triable issue of fact as to a knowing and material misrepresentation as to the claim that the video, or the 259 videos at issue in the 09/29/08 Letter (the "**259 Videos**"), under the <u>Lenz</u> and <u>Rossi</u> standards.

Counsel explicitly considered fair use in evaluating the 259 Videos, in total, including a specific evaluation of the Video, as the Shapiro Declaration establishes. As such, Counsel's fair use analysis would fulfill the requirements of <u>Rossi</u>. Even if Counsel's analysis was imperfect or mistaken, or subject to differing interpretations of how to apply the applicable fair use standards, any such mistake or imperfection simply does not constitute a *knowing* misrepresentation.

Plaintiff also seeks to conveniently ignore the fact that the 09/29/08 Letter dealt with the collective body of the 259 Videos, and insists on asserting allegations that imply that the 09/29/08 Letter focused expressly on the specifics of the Video, viewed in context of OTRN's assignment of the copyright solely to the 10/29/07 Broadcast (the "**Assignment**"), and with a singular focus on the CAIR Case. However, whether or not the party tasking Counsel to review the panoply of videos on YouTube which presented a virtual library of content from the Show should, in a perfect world, have had the foresight to alert Counsel in advance to the Assignment and the CAIR Case, this does not, and cannot, change the fact that even if any parties are chargeable with honest oversight or inadvertence in this area, that does not rise to the level of subjective bad faith.

Plaintiff asserts in the Complaint that the Video is "clearly fair use" (Paragraph 22, line 21) and thus beyond the possibility of any good faith claim by Savage (even though Savage

15

never asserted any such claim, since the 09/29/08 Letter was not issued on behalf of Savage). This is obviously erroneous.

A reasonable basis for a good faith belief that the Video infringes the applicable copyright clearly exists. The Video, which runs one minute and twenty-three seconds, contains nearly one minute of recorded copyrighted material, played over several images of Savage, capped by a simple listing of Savage's advertisers and a request to visit an anti-Savage website. In Lenz, the copyrighted material was incidental background music -- and even then, Judge Fogel, in his Lenz dicta and his order denying the motion to dismiss in Lenz, suggested that Universal's subjective good faith belief that the use was not fair use in Lenz's video was probably enough to justify a summary judgment motion.

In this Action, the copyrighted material was predominant and commentary was incidental (i.e. the quantity of copyrighted material exceeded the totality of all total commentary, such that the commentary/message was in fact incidental to the copyrighted material, as opposed to incidental use of copyrighted material to illustrate or identify what true commentary is in fact commenting on). This distinction caused Counsel to conclude, in good faith, that the nature and extent of the use of copyrighted material in relation to the totality of the Video did not meet the test of fair use. The content of the Video certainly sustains the veracity of good faith in the 09/29/08 Letter even if the 09/29/08 Letter had dealt solely with the Video as a standalone video (which clearly was not the case), rather than as part of an extensive collection of videos.

Plaintiff seeks to override the good faith fair use analysis of Counsel by citing Savage v. CAIR, apparently suggesting that the Court's ruling in that case would prevent any "good faith" notice from being issued on behalf of Savage with regard to the Video. This is erroneous. In fact, the material at issue in Savage v. CAIR is utterly unlike the material at issue in the Video. In Savage v. CAIR, according to Plaintiff's own complaint, CAIR "posted a detailed criticism of Savage on its website (www.cair.com) entitled 'National Radio Host Goes ON Anti-Muslim Tirade'" (Paragraph 15, lines 2-3). The detailed criticism, which tallies 669 words, was accompanied by four minutes of audio clips from the 10/29/07 Program (the "**CAIR Use**"). No such detailed criticism by Plaintiff appears in the Video, other than a general admonishment of

16

Savage, a list of Savage advertisers, and a link to NoSavage.org. The use in the Video does not have the same basis to claim transformative use as CAIR claimed in Savage v. CAIR.

Further, the CAIR Case did not involve aggregated use of copyrighted material. Even if Savage had authorized the issuance of the 09/29/08 Letter, which he did not, the unrestricted use of numerous segments of the Show, in the aggregate, creates a substantial harm by flooding the market with copyrighted material from the Show in a way totally different from the situation posed by the material in the CAIR Case, which involved 1 single use, rather than a library of 259 uses in the aggregate.

"Fair use is a mixed question of law and fact, but it is well established that a court can resolve the issue of fair use on a motion for summary judgment when no material facts are in dispute." See Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 530 (9th Cir. 2008). The elements in determining fair use are listed in 17 U.S.C. §107:

      (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
      (2) the nature of the copyrighted work;
      (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
      (4) the effect of the use upon the potential market for or value of the copyrighted work.

These elements demonstrate that even under Lenz and Savage v. CAIR, and even had Savage authorized the 09/29/08 Letter, which he did not, there was an undeniable good faith belief in the existence of copyright infringement by the attorney conducting the analysis, and that summary judgment should be issued based upon the subjective good faith of the actual analysis made. The Video was one of 259 videos posted at YouTube containing copyrighted material from the Show. While Plaintiff is a 501(c)4, the amount and substantiality of the portion used in relation to the copyrighted work as a whole is significant, particularly when the 259 Videos are taken together. The availability of hundreds of videos of copyrighted material creates a virtual library which dramatically reduces the value of the copyrighted material in its entirety.

Even leaving aside the 258 other videos, it is clear that the Video sustains a good faith belief that the Video violated copyright protections. The first factor listed by the Copyright Act – "the purpose and character of the use" -- cuts in Defendant's favor. In Los Angeles News

Service v. KCAL-TV Channel 9, 108 F.3d 1119 (9th Cir. 1997), for example, a television station news broadcast used 30 seconds from a copyrighted videotape of the 1992 Los Angeles beating of Reginald Denny. The Court found that the television news station had violated copyright. The Court stated, quoting Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 538, 560 (1985), "[t]he crux of the profit/non-profit distinction is whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." See Los Angeles News Service, 148 F.3d 994. Plaintiff itself claims that Plaintiff was using the Video to raise money for itself (and indeed claims damages for the temporary interruption in its use of copyrighted material for its own profit). The Video opens by referring to Plaintiff. Plaintiff's website solicits donations. The Complaint acknowledges that Plaintiff uses YouTube as a way to raise money: "Brave New Films' entire YouTube channel is Brave New Films' main channel of distribution for its videos temporary disablement of Brave New Films' channel caused damages to Brave New Films, including the visibility Brave New Films had worked so hard to achieve" (Paragraph 26, lines 15-19). In Savage v. CAIR, the Court rejected Savage's claim that the CAIR Use was not fair use in part because "Plaintiff has made no allegation that defendants used plaintiff's work for anything other than criticism or comment on plaintiff's views." Savage v. CAIR, No. C 07-6076 SI (N.D. Ca. July 25, 2008) (order granting motion for judgment on the pleadings). There is no absence of such an allegation here.

The second factor determining fair use – the "nature of the copyrighted work" – also cuts in favor of Defendant. Courts usually distinguish "informational" works from "creative" works, stating that creative works are "closer to the intended copyright protection." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 586 (1994). As the Court put it in Leadsinger, "work of creative expression, as opposed to … information work, … is precisely the sort of expression that the copyright law aims to protect." Leadsinger, at 531. The Show is a creative work; Savage's style and content are the main appeal of the Show. The particular material utilized in the Video involves creative commentary, rather than conveying informational material. Plaintiff admits as much in the Complaint, acknowledging that "Defendant Michael Weiner is a nationally syndicated talk show host who *performs* under the name Michael Savage" (Paragraph 4, lines 6-

7) (emphasis added). Similarly, Plaintiff describes the 10/29/07 Broadcast as "an anti-Muslim tirade," filled with "bigoted statements" (Paragraphs 14-15). Surely Plaintiff would not characterize such material as "informational" under Leadsinger. As a creative work, the Show is entitled to more stringent copyright protection. Indeed, in Savage v. CAIR, the Court found that this factor weighed against the fair use argument made by CAIR with regard to the CAIR Use. Savage v. CAIR, No. C 07-6076 SI (N.D. Ca. July 25, 2008) (order granting motion for judgment on the pleadings).

The third factor weighed in "fair use" cases is the amount and substantiality of the portion used. Here, the length of the clip utilized is not dispositive. In Roy Export Co. Estab. of Vaduz v. Columbia Broadcasting Sys., Inc., 672 F.2d 1095 (2d. Cir. 1982), for example, the Court found that a television news program could not use a one minute and fifteen second clip from a 72-minute Charlie Chaplin film in reporting about Chaplin's death, since the use was so qualitatively or quantitatively substantial that it constituted an infringement. Similarly, in Elvis Presley Enters. v. Passport Video, 357 F.3d 896 (9th Cir. 2003), the Court held that short clips of Elvis Presley were not protected by fair use simply due to their length: "although the clips are relatively short when compared to the entire shows that are copyrighted, they are in many instances the heart of the work." In this case, Plaintiff itself asserts that Savage's monologue was evocative of his entire body of work in titling the Video "Michael Savage Hates Muslims" -- the idea conveyed is that this clip represents Savage's entire worldview with regard to a particular religion as expressed on the Show. As Plaintiff puts it in its Complaint, the Video "uses approximately one minute of excerpts . . . to demonstrate and criticize Savage's vocal hatred of Muslims broadcast on his program" (Paragraph 1, lines 8-10). Under the Elvis standard, this factor cuts in favor of a good faith belief that the Video was not fair use. In Savage v. CAIR, the Court found that this factor weighed in favor the CAIR Use, explaining that defendants used the "audio excerpts to comment on and rebut derogatory statements regarding their organization and their religious affiliations, and the amount used in reference to plaintiff's statements was reasonably necessary to convey the extent of plaintiff's comments." Savage v. CAIR, No. C 07-6076 SI (N.D. Ca. July 25, 2008) (order granting motion for judgment on the

pleadings). This is not true with regard to the Video, since the proportion of commentary is so small in comparison with the proportion of commentary in the CAIR Use and there was no rebuttal.

The nature of the use of copyrighted material by Plaintiff in the Video was simply not the same as the CAIR use. The fact that the CAIR use and the Video both involved the 10/29/07 Broadcast does not establish that the uses are the same or that the Court's ruling in <u>Savage v. CAIR</u> is dispositive of the fair use analysis with respect to the Video (even without addressing the fact that Counsel was not aware of the Court's ruling in <u>Savage v. CAIR</u> when he conducted that analysis, and that his lack of such knowledge did not constitute subjective bad faith).

The fourth factor weighed in "fair use" cases – the effect of the use upon the potential market – also weighs in Defendant's favor. This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market' for the original." <u>See</u> <u>Campbell</u>, 510 U.S. at 590 (citing Nimmer § 13.05 [A] [4], p. 13-102.61 (footnote omitted)). In this case, it is obvious that the type of infringement presented by the Video presents an enormous harm if such conduct were unrestricted and widespread. In fact, such conduct *is* unrestricted and widespread – the 09/29/08 Letter dealt not with the Video, alone, but with the totality of 259 videos involving content from the Show on a host of subjects, such that someone desiring to go to archived content of the Show could spend hours listening to the copyrighted content on YouTube rather than seek out such content through paying fees to access the official archived material for the Show. In <u>Savage v. CAIR</u>, the Court found that plaintiff had failed "to allege or suggest an impact on the actual or potential sale, marketability, or demand for the original, copyrighted work. There is no suggestion that plaintiff has, or ever had, any kind of market for the copyrighted work at issue outside its airing on the October 29, 2007 radio show." <u>Savage v. CAIR</u>, No. C 07-6076 SI (N.D. Ca. July 25, 2008) (order granting motion for judgment on the pleadings). No such lack of argument exists here, and the fact remains that the Court's ruling

involved a single use in the abstract, whereas the 9/29/08 Letter clearly involved the 259 Videos as a collective body, and did not single out the Video separately from the collective whole.

Examination of the four elements of "fair use" claims demonstrates that the 09/29/08 Letter's copyright infringement claim has a good faith cognizable basis, both as to the totality of the 259 Videos and as to the Video itself. Although Savage did not authorize the 09/29/08 Letter, even if he *had* authorized the 09/29/08 Letter, such authorization would have been a subjective good faith authorization under 512(f).

The basis for a good faith belief in grounds to challenge use of copyrighted material is addressed to establish that even in the unlikely event that Plaintiff could establish some triable issue of material fact on the issue of agency, for example, Defendant is nevertheless also entitled to summary judgment on other grounds – over and above the fact that Savage had no involvement in the actions properly at issue in this Action, which Savage respectfully submits should be dispositive in favor of granting summary judgment to Savage. As such, the foregoing discussion is not advanced as solely to show the abuse of any basis for a claim of subjective bad faith, and not as a present challenge to the Video, or as an admission or suggestion that Savage authorized the 09/29/08 Letter (since that is not the case).

As noted above, the material at issue is different in the CAIR Use and the Video, and a determination as to one set of factual circumstances cannot be dispositive as to the proper determination with respect to different factual circumstances, regardless of whether the Court would agree with Plaintiff's legal contentions, or Counsel's legal analysis, should an actual fair use determination be deemed to be appropriate at some point in time. A difference of opinion or interpretation of a fair use analysis, or even a finding of an error in Counsel's analysis, is not the standard for a claim under 512(f) – knowing misrepresentation is, and there simply was none here.

Counsel reached his conclusions based upon his review of the YouTube postings, inclusive of the 259 Videos, and his interpretation of the applicable statutory provisions and legal precedents, in good faith (without knowledge at the time of the Court's rulings in Savage v. CAIR, or of the assignment by OTRN to Savage of the copyright to the 10/29/07 Broadcast).

21

The foregoing analysis also demonstrates the irrelevance and impropriety of Plaintiff's efforts to interject the CAIR Case into this Action through multiple allegations concerning a case which is clearly distinguishable.

### C. There Is No Ongoing Controversy.

Plaintiff's claim for injunctive and declaratory relief is barred if no continuing controversy exists with respect to Plaintiff's use of the Video. Under <u>Clark v. City of Lakewood</u>, 259 F.3d 996, 1011 (9th Cir. 2001) (citations omitted), a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." In this case, Savage has never challenged Plaintiff's use of the Video, since Savage was in no way associated with the 09/29/08 Letter. A reference to the Video was mistakenly included in the 09/29/08 Letter issued by OTRN, which addressed 259 videos. Any content posted by Plaintiff on YouTube and removed as a result thereof was restored to YouTube within a short period of time without any involvement or objection of Savage. Regardless of any prior circumstances, therefore, there is no legal basis for issuance of any injunction in this Action as to Savage, as there is, and can be, no actual showing of past, ongoing or future actions by Savage justifying any injunctive or declaratory relief against Savage.

### D. The Complaint Is An Attempt To Target Savage.

This Action seeks declaratory and injunctive relief and damages for the issuance of the 09/29/08 Letter by OTRN. The Complaint was issued precipitously, without first contacting OTRN or Savage (which would have caused OTRN to revoke the 09/29/08 Letter with regard to the Video), and expressly targets Savage by name for his beliefs and public statements, and for bringing the CAIR Case, which have nothing to do with any legitimate issues posed by this Action.

In targeting Savage, Plaintiff makes allegations about Savage's purported "hateful views" (Paragraph 19, line 2) and purported "intolerance" (Paragraph 19, line 28), as well as baseless allegations about "Savage's retaliatory lawsuit against CAIR" and "his attempts to censor CAIR

22

by suing the group for copyright infringement" (Paragraph 19, lines 4-6).  Plaintiff also demonstrates its animus for Savage in its website posting, attached as "**Exhibit A**", in which Plaintiff labeled Savage "a bully" and claimed that he "derides, demeans, and distorts those who don't agree with his hate-filled, right-wing agenda, and when that fails, he files lawsuits."  The words "he files lawsuits" link to a story about <u>Savage v. CAIR</u>, demonstrating Plaintiff's attempt to retaliate against Savage for his lawsuit against CAIR which is wholly unrelated to issues in this Action, and, quite frankly, are solely within the province of this Court in <u>Savage v. CAIR</u>, and not for Plaintiff to address outside of the <u>Savage v. CAIR</u> case.

The Complaint demonstrates Plaintiff's animus toward Savage.  It demonstrates Plaintiff's desire to punish Savage for the CAIR Case.  It demonstrates the importance of granting the relief requested by Savage to relieve him from continuing undue hardship in an action pursued against him in bad faith.  The Complaint does not, however, establish any basis of fact whatsoever supporting any claim asserted against Savage in this Action.

## IV.     CONCLUSION

For the foregoing reasons, this Court should grant the Motion and enter judgment for Defendant on all causes of action in the Complaint.

Respectfully submitted,

_____/s/ Benjamin Shapiro_____

Benjamin Shapiro
12330 Magnolia Blvd., #114
Valley Village, CA 91607
(818) 620-0137
Bshapiro708@gmail.com

Attorney for Defendant MICHAEL
WEINER, aka MICHAEL SAVAGE

## PROOF OF SERVICE BY E-MAIL

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within case. My business address is 12330 Magnolia Boulevard Suite 114, Los Angeles, CA, 91607. On March 5, 2009, I served the attached **DEFENDANT MICHAEL WEINER aka MICHAEL SAVAGE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in the above captioned action by E-mail as follows:

Tony Falzone
falzone@stanford.edu

William Abrams
William.abrams@bingham.com

Ronald H. Severaid
rhseveraid@sbcglobal.net

Carter Glahn
cglahn@sbcglobal.net

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on May 8, 2009 at Los Angeles, California.

_____/s/ Benjamin Shapiro_____

Benjamin Shapiro
12330 Magnolia Blvd., #114
Valley Village, CA 91607
(818) 620-0137
Bshapiro708@gmail.com

Attorney for Defendant MICHAEL
WEINER aka MICHAEL SAVAGE
