Benjamin Aaron Shapiro (SBN 254456)
12330 Magnolia Blvd., #114
Valley Village, CA 91607
Telephone: (818) 620-0137

Ronald H. Severaid (SBN78923)
Carter Glahn (SBN 242378)
SEVERAID & GLAHN, PC
1787 Tribute Road, Suite D
Sacramento, CA 95815
Telephone: (916) 929-8383
Facsimile: (916) 925-4763
E-mail: rhseveraid@sbcglobal.net
       cglahn@sbcglobal.net

Attorneys for Defendant
THE ORIGINAL TALK RADIO NETWORK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAVE NEW FILMS 501(c)(4),<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL WEINER aka MICHAEL SAVAGE and ORIGINAL TALK RADIO NETWORK, INC.,<br><br>        Defendants | Case No.: CV 08-4703 SI<br><br>**REPLY OF DEFENDANT THE ORIGINAL TALK RADIO NETWORK, INC. TO PLAINTIFF BRAVE NEW FILMS 501(c)(4)'S OPPOSITION TO DEFENDANT THE ORIGINAL TALK RADIO NETWORK INC.'S MOTION FOR SUPPLEMENTAL PROTECTIVE ORDER**<br><br>Date: May 22, 2009<br>Time: 9:00 a.m.<br>Dept: Courtroom 10 |

Defendant THE ORIGINAL TALK RADIO NETWORK, INC. **("OTRN")** submits, in the above-captioned action (this "**Action**"), the following reply to the opposition by plaintiff BRAVE NEW FILMS 501(c)(4) ("**Plaintiff**") to OTRN's Motion For Supplemental Protective Order now pending in this Action (the "**Motion**").

1
DEFENDANT OTRN'S REPLY
TO PLAINTIFF BRAVE NEW FILMS 501(c)(4)'S OPPOSITION
TO DEFENDANT OTRN'S MOTION FOR SUPPLEMENTAL PROTECTIVE ORDER
Case No. CV 08-4703 SI

Dockets.Justia.com

Plaintiff has submitted Plaintiff's opposition points and authorities to the Motion (the "**Opposition**") which provides, in a one-sided, self-serving, and not wholly accurate fashion Plaintiff's view of the circumstances giving rise to the Motion.

To cite one illustrative example, at page 3, lines 3-7, the Opposition falsely states that OTRN never advised that it would seek an additional protective order. In the purported confirming letter of the March 17, 2009 meet and confer, a copy of which is set forth at Document 72-2, at the top of page 2 thereof, there is an acknowledgement that OTRN was proposing a third party neutral to review documents, and that Plaintiff did not agree to that proposal. In truth, counsel for OTRN was quite clear that the proposed stipulated protective order did not provide adequate protection in this Action, and it was clearly communicated by counsel for the defendants that the defendants would stipulate to the protective order subject to the clear caveat that they reserved the right to pursue a supplemental protective order.

There are multiple cases in which OTRN challenges factual assertions in the opposition. In the interests of space, OTRN will seek to respond with respect to the primary legal issues posted by the Opposition without responding point by point to Plaintiff's contention, it does, however, stand by all points raised by OTRN in support of the Motion.

Plaintiff argues that it needs the discovery at issue in order to determine four issues:

(1) "**What Savage knew or did not know about the takedown letter issued by OTRN**" – There simply are no documents with any information on that point prior to the commencement of this Action and the filing of pleadings and declarations in this Action on that point, as there was no such knowledge.

(2) "**Whether OTRN acted as Savage's agent in issuing the takedown letter**" – Again, there simply are no documents containing information on this point due to the absence of facts sought by Plaintiff.

(3) "**Whether, at the time the takedown notice was issued, OTRN had a good faith belief that it owned copyrighted material allegedly infringed by Brave New Films' Video**" –

OTRN admits it previously assigned the copyright to the October 29, 2007 broadcast of the Show (the "**10/29/07 Broadcast**") to Savage and that, as a result, its copyright claim was inadvertently in error as to the video at issue in this Action (the "**Video**") – which was one of 259 videos at issue in the September 29, 2008 letter at issue in this Action (the "**09/29/08 Letter**"). Plaintiff now wants to examine documents relating to the copyright interests in the Show generally in the hopes that it can find a document that shows that OTRN does not have copyright interests to the Show, with the exception of its assignment of the copyright to the 10/29/07 Broadcast to Savage (the "**Assignment**"), for which OTRN had produced a copy of the Assignment as a Confidential document. There are no documents which contain any information showing what Plaintiff is looking for – that OTRN is not the owner of the copyrights to all broadcasts of the Show other than the 10/29/07 Broadcast. There are perhaps a handful of highly confidential documents that could support what OTRN has stated in declarations under penalty of perjury. If essential for someone to verify that this is in fact the case, there would be only a minimal burden for a magistrate to review and verify the information.

(4) "**Whether OTRN's material misrepresentation was made in good faith**" – This is, in essence, a variation of (3). With the exception of the handful of documents addressed re (3), there are no documents which are responsive.

Plaintiff, in essence, seeks documents that could show that the facts are not as represented under penalty of perjury in the defendants' declarations, and refuses to believe no such documents exist. So, Plaintiff demands any and all documents concerning the relationships between OTRN and Savage. Rather than narrow the scope of their demand – or agree that there is a less burdensome way to in fact verify whether the defendants' attorneys are perjuring themselves – Plaintiff continues to pursue all documents with respect to the "relationship" between OTRN and Savage, which would include everything from complaints about microphone settings to data on compensation terms and payment communications – with no effort to delineate the specifics of what limited documents might be proper. Indeed, while Plaintiff states

3
DEFENDANT OTRN'S REPLY
TO PLAINTIFF BRAVE NEW FILMS 501(c)(4)'S OPPOSITION
TO DEFENDANT OTRN'S MOTION FOR SUPPLEMENTAL PROTECTIVE ORDER
Case No. CV 08-4703 SI

it is not seeking compensation information, it does not exclude that, or any other irrelevant information, from the scope of its demand.

Such broad-based demands are the epitome of fishing expeditions. Given the fact that the complaint in this action (the "**Complaint**") and other actions of Plaintiff's show substantial hostility to Savage, and a desire to punish him for commencing the CAIR case, these demands raise broader concerns as to the propriety of Plaintiff or its representatives seeking to push the envelope in sorting through a host of confidential and sensitive information consisting of thousands of documents, purportedly to confirm that they are not in fact relevant and do not show perjury by the defendants' attorneys.

Moreover, the truth is that the issues in this Action are fairly clear and are, in fact, susceptible to being resolved in dispositive motions now pending for June 12th, (including one by Plaintiff), without the need for extended discovery which needlessly burdens the defendants and drives up costs – as well as burdens the Court – all proper grounds for a protective order.

# ARGUMENT

### A. OTRN And Savage Require A Supplemental Protective Order Due To Plaintiff's Obvious Animus For Defendants And Plaintiff's Belief That Unmitigated Fishing Expeditions Are Warranted By The Federal Rules Of Civil Procedure.

Plaintiff states that OTRN "cites no authority for the proposition that a supplemental protective order should be granted on facts such as those present here." Yet OTRN clearly cited *Pasadena Oil & Gas Wyo. LLC v. Mon. Oil Props. Inc.* in support of the proposition that when claims to privacy outweigh the needs for disclosure, protective orders may be granted, and that courts may enter "protective orders allowing discovery but limiting the use of the discovered documents." *Pasadena*, No. 07-35896, 2009 U.S. App. LEXIS 6161 at *3 (9th Cir. Mar. 26, 2009). *Ibid*, at *4. Plaintiff's contention that *Pasadena* does not apply because it deals with protective orders generally rather than supplemental protective orders is completely specious, citing no case law that creates a distinction between protective orders and supplemental protective orders. In point of fact, a "motion to intervene for the purpose of modifying a

protective order should often be granted." *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us*, 62 F.3d 1217, 1219 (9th Cir. 1995).

Plaintiff states that OTRN "does not identify the documents it seeks to protect, how it expects the information to end up in the hands of competitors, or how disclosure will oppress or provide severe detriment to OTRN" (Opposition, page 4, lines 7-9). This contention is wholly unwarranted. The Motion *did* specifically identify at least one document Defendants seek to protect – the Host Agreement. It did not specify a full listing of all documents because to do so would defeat the point of the Motion. Further, the Motion expressly discussed how the disclosure of such documents, particularly the Host Agreement, could harm defendant (Defendants' Motion For Supplemental Protective Order, page 9, lines 7-10).

Plaintiff's sole remaining argument, then, is its contention that OTRN has not specified how it expects disclosed information to end up in the hands of competitors. Plaintiff argues that Plaintiff "understands the gravity of failing to comply with a court order" (Opposition, page 5, lines 27-28), and that therefore, there is no need for a discovery gatekeeper.

Such assurances are of no practical value under the law. In *Brown Bag v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992), for example, Plaintiff's counsel "reassured the magistrate that the professional integrity of in-house counsel and his promise to store the trade secret documents in a locked file cabinet in his Brown Bag office sufficiently protected Symantec from inadvertent disclosure. The magistrate expressly credited in-house counsel's integrity and good faith. The magistrate had to consider, however, not only whether the documents could be locked up in cabinets, but also whether Brown Bag's counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents."

The same question exists here. Defendants believe that there is a significant possibility that Plaintiff or Plaintiff's attorneys will inadvertently or purposefully fail to comply with the current Protective Order in ways that may not be readily identifiable and enforceable through subsequent proceedings in this Action.

## B. Good Cause Exists For Warranting Production Of Documents To A Third Party Magistrate

Plaintiff claims that no good cause exists for warranting production of documents to a third-party magistrate. Under *Brown Bag*, courts must balance the "risk of inadvertent disclosure of trade secrets to competitors against the risk ... that protection of ... trade secrets impaired prosecution ... of claims" in determining whether third-party review of discovery is appropriate. *Brown Bag*, at 1470. Plaintiff claims that *Brown Bag* is distinguishable from the current case because in *Brown Bag*, (i) the parties were competitive parties; (ii) the discovering party was utilizing in-house counsel; and (iii) the discovering party's former outside counsel had already reviewed discovery materials and so had time to prepare the party's case against summary judgment.

Plaintiff's descriptions of these three distinctions are either incorrect or moot. First, the fact that the parties were competitive in *Brown Bag* is not dispositive – the question is not whether the parties are in fact competitors, but whether trade secrets may be released to competitors. See *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), for example.

Second, the Court in *Brown Bag* expressly dismissed any bright line distinction between in-house counsel and outside counsel in determining whether third-party production was necessary: "The *U.S. Steel* court cautioned against arbitrary distinctions based on type of counsel employed, noting that in practice the risk of inadvertent disclosure of trade secrets obtains equally for both kinds of counsel. The *U.S. Steel* court concluded that, to evaluate the risk of inadvertent disclosure, a court should examine the factual circumstances of *any* counsel's relationship to the party demanding access." *Brown Bag*, at 1470. The Court in *U.S. Steel* was even more explicit: "In-house counsel provide the same services and are subject to the same types of pressures as retained counsel. The problem and importance of avoiding inadvertent disclosure is the same for both. Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it

may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." *U.S. Steel*, at 1468.

Finally, Plaintiff's argument that there is a distinction in the discovery status between *Brown Bag* and the current case is simply erroneous. Plaintiff places undue emphasis on the fact that the discovery deadline in *Brown Bag* had passed, and that the plaintiff in *Brown Bag* had had "ample time to review the documents containing trade secrets and to develop admissible evidence from the trade secrets divulged" (Opposition, page 6, lines 14-17). In *Brown Bag*, however, the Court noted that "none of the trade secrets were themselves relevant to Brown Bag's ... infringement claim"; the Court further noted that "the magistrate provided means by which ... counsel could have obtained access to essential documents." *Brown Bag*, at 1471. That is precisely what OTRN requests in this Action.

Plaintiff's discovery requests are utterly overbroad, and request both irrelevant and confidential material. Under *Brown Bag*, the production of properly identified documents to a third-party magistrate judge for redaction where appropriate provides access to any essential documents and information to Plaintiff without risking the possibility of disclosure of trade secrets to competitors.

### C. Discovery Should Be Stayed Until Determination of Summary Judgment Motions.

Magistrate judges "have been given broad discretion to stay discovery pending decisions on dispositive motions, including motions for summary judgment." *Pacific Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, PA, 220 F.R.D. 349, 351 (N.D. Cal 2003). In order to stay discovery until the determination of summary judgment motions, Defendant must demonstrate that (1) a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed; and (2) the pending dispositive motion can be decided absent further discovery. *Ibid*, at 351-352. Plaintiff claims that Defendants have "shown neither" (Opposition, page 7, lines 12-13).

This is plainly incorrect. Both defendants have filed motions for summary judgment which, if granted, would dispose of the entire case. The pending summary judgment motions can and should be decided without further discovery. Plaintiff makes two legal contentions: (i) OTRN acted as Savage's agent in issuing the 9/29/08 Letter; and (ii) OTRN "knowingly misrepresented" that it owned copyrighted material allegedly infringed by the Video. Both issues can be resolved without further discovery. No amount of discovery would change this fact, and exorbitant discovery would be unduly burdensome and wasteful in light of the dispositive motions on the table.

In fact, agency is obviously precluded by the 09/29/08 Letter itself. The 09/29/08 Letter demonstrates that Plaintiff's alleged belief in OTRN's agency on behalf of Savage was objectively *un*reasonable. Plaintiff attached a copy of the 09/29/08 Letter to the Complaint. The 09/29/08 Letter contains the only factual element of the Complaint directly addressing the involvement of Savage as to the relevant issues posed by Plaintiff's causes of action in this Action, and it does not purport to represent Savage in any way. To the contrary, the 09/29/08 Letter in fact states precisely the opposite: "Please also be advised that OTRN does not, by this letter, disclaim, release or speak for the separate rights of Michael Savage."

Secondly, the claim that OTRN did not have a good faith belief in its ownership of copyright material in the Video under 512(f), and that it therefore "knowingly misrepresented" such ownership in the 9/29/08 Letter, requires no further discovery. Declarations of Benjamin Shapiro, Carter Glahn, and Ronald Severaid, all under penalty of perjury, demonstrate that no knowing misrepresentation took place; that in fact the drafting attorney, Shapiro, had a good faith belief that OTRN's copyright was violated by the Video; that Severaid, who did know of the assignment of the 10/29/07 Broadcast to Savage, did not review the underlying videos addressed in the 9/29/08 Letter; and that Glahn neither reviewed the underlying videos to the 9/29/08 Letter nor knew that the copyright to the 10/29/07 Broadcast had been assigned to Savage. No number of depositions or amount of further discovery will uncover any evidence to the contrary, for the simple reason that no such evidence exists – and Plaintiff can cite no evidence to contradict Shapiro's, Glahn's and Severaid's declarations. Pure hopeful speculation

on Plaintiff's part that unbridled discovery will turn up a "smoking gun" should not be accommodated by the Court.

Finally, Plaintiff's argument that OTRN's request for a stay "also precludes Brave New Films from filing its own dispositive motion on the same issues" (Opposition, page 8, lines 11-12) is spurious. Plaintiff has never been barred from filing dispositive motions on these issues – it simply cannot produce evidence to back them up, since no such evidence has ever existed. The fact that Plaintiff has not had the chance to explore every single page detailing a "relationship" between OTRN and Savage that goes back almost a decade and has nothing to do with this case does not mean that they should be permitted to do so in the speculative hope that they will be able to file dispositive motions based on non-existent evidence.

### D.   The Savage Documents Are Irrelevant.

Courts have routinely granted protective orders to limit overbroad discovery requests that create undue burden on the producing party. As the Court put it in *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir., 2004), "District courts need not condone the use of discovery to engage in 'fishing expeditions.'" Relevance of information sought is a key consideration in determining whether a protective order is appropriate. *Church of Scientology Int'l v. Fishman*, 1994 U.S. App. LEXIS 23848, 10 (9th Cir., 1994). Plaintiff has no basis whatsoever to suggest that the myriad documents it demands contain relevant information. Plaintiff's refusal to allow redaction of any portion of these documents that is irrelevant, or even to allow a third-party magistrate judge to do so, is a clear indication of its desire to pry as deeply as possible into the inner workings of Savage and OTRN. Allowing blanket discovery requests asking for all documents in the universe related to Savage and OTRN under the rubric of the Federal Rules obviously defeats the intended purpose of Federal Rule 26(c) and legitimizes even the most unsupported fishing expeditions – expeditions like the one conducted here by Plaintiff.

## V. CONCLUSION

For the foregoing reasons, Defendants Savage and OTRN respectfully request that this Court grant OTRN's Motion for Supplemental Protective Order.

DATED: May 8, 2009

SEVERAID & GLAHN, PC


By_____
　　Ronald H. Severaid

1787 Tribute Road, Suite D
Sacramento, CA  95815
(916) 929-8383
rhseveraid@sbcglobal.net

Attorneys for Defendant THE ORIGINAL TALK RADIO NETWORK, INC.

**PROOF OF SERVICE BY E-MAIL**

I am employed in the County of Sacramento, California. I am over the age of eighteen years and not a party to the within case. My business address is 1787 Tribute Road, Suite D, Sacramento, CA 95815. On May 8, 2009, I served the attached **REPLY OF DEFENDANT THE ORIGINAL TALK RADIO NETWORK, INC. TO PLAINTIFF BRAVE NEW FILMS 501(c)(4)'S OPPOSITION TO DEFENDANT THE ORIGINAL TALK RADIO NETWORK, INC.'S MOTION FOR SUPPLEMENTAL PROTECTIVE ORDER** on the interested parties in the above captioned action by E-mail as follows:

Tony Falzone
falzone@stanford.edu

William Abrams
William.abrams@bingham.com

Benjamin A. Shapiro
Bshapiro708@gmail.com

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on May 8, 2009 at Sacramento, California.

          /s/ Carter Glahn
          Carter Glahn