IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAVE NEW FILMS 501(C)(4), | No. C 08-04703 SI |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| MICHAEL WEINER a/k/a MICHAEL SAVAGE, and ORIGINAL TALK RADIO NETWORK, INC., | |
| Defendants. / | |

Plaintiff has filed a motion for partial summary judgment. The motion is scheduled for a hearing on June 12, 2009. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing. **The case management conference scheduled for the same day remains on calendar.** Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES plaintiff's motion for summary judgment.

**BACKGROUND**

Defendant Michael Weiner is a nationally syndicated talk show host who performs under the name Michael Savage and hosts the talk show program "The Michael Savage Show." During his two-hour broadcast of The Michael Savage Show on October 29, 2007, Savage made derogatory comments about Muslims, Islam, and the Quran.[1] Shortly after the show aired, the Council for American-Islamic

---

[1] The Court GRANTS plaintiff's request for judicial notice of exhibit G to plaintiff's Request for Judicial Notice. [Docket No. 50] Defendants do not dispute plaintiff's representation that this is an audio recording of excerpts from the October 29, 2007 broadcast of The Michael Savage Show. The

Relations ("CAIR"), a Muslim civil rights group, posted a criticism of Savage on the CAIR website. The posting included more than four minutes of audio excerpts from Savage's October 29, 2007 broadcast. In response to this criticism, Savage filed a lawsuit against CAIR on December 3, 2007 in this Court, Case No. C 07-6076 SI, alleging that CAIR infringed his copyright by posting audio excerpts of the October 29 broadcast on the CAIR website. On July 25, 2008, the Court found that CAIR's use of the broadcast constituted fair use and granted CAIR's motion for judgment on the pleadings on this issue. *See* July 25 Order, at *13. [C 07-6076 SI, Docket No. 38] In the CAIR case, there was no dispute that the October 29, 2007 broadcast was copyrighted and that Savage owned the copyrighted material. *Id.* at *4. According to the records of the United States Copyright Office, Savage is the registered copyright owner of the October 29, 2007 broadcast of The Michael Savage Show.[2]

The subject of this lawsuit is a video entitled "Michael Savage Hates Muslims" ("the Video") created by plaintiff Brave New Films 501(c)(4) ("Brave New Films"). Complaint, ex. B. The Video is one minute and twenty-three seconds long and uses approximately one minute of audio excerpts from the October 29, 2007 broadcast. *Id.* It also advertises a website, www.nosavage.com, and urges viewers to "do something" about Savage. *Id.*

On January 18, 2008, Brave New Films uploaded the Video to the internet site owned by YouTube, Inc. On September 29, 2008, defendant Original Talk Radio Network, Inc. ("OTRN"), through its counsel, contacted YouTube concerning the Video and 258 other videos, almost all of which apparently contain content from The Michael Savage Show. *See* Complaint, ex. C ("the September 29 letter"). OTRN syndicates and distributes talk radio content, including The Michael Savage Show, to

---

excerpts include the following comments:
"I don't want to hear one more word about Islam. Take your religion and shove it up your behind. I'm sick of you."
"Don't tell me I need reeducation. They need deportation."
"You can take your due process and shove it."
"Throwback bastards. I'm so sick of them."
"Every day another story sweet-selling Islam and the Quran. . . . . Wherever you look on the earth there's a bomb going off, or a car going up in flames, and it's Muslims screaming for the blood of Christians, or Jews, or anyone they hate."

[2] The Court GRANTS plaintiff's request for judicial notice of exhibit E to plaintiff's Request for Judicial Notice. [Docket No. 50] Defendants do not dispute that this is an accurate copy of the U.S. Copyright Office's website registration record of the October 29, 2007 broadcast of The Michael Savage Show. The registration reflects that Michael Weiner/Savage holds the copyright to this broadcast.

2

more than 300 affiliate radio stations. In the September 29 letter, which was directed to YouTube's "DMCA Complaints" department,[3] OTRN's counsel claimed that its office "represents the owner of an exclusive right infringed by" the 259 videos. The letter characterized The Michael Savage Show as "OTRN Content." It demanded that YouTube immediately remove all videos that contained content from The Michael Savage Show, including the 259 videos listed in the letter. The letter also advised YouTube that "OTRN does not, by this letter, disclaim, release or speak for the separate rights of Michael Savage . . . with respect to any content" posted on YouTube. *See* Complaint, ex. C.

YouTube responded to OTRN's letter by disabling access to the Video and Brave New Films' entire YouTube channel. Decl. of James Gilliam in Supp. of Pl. Mot. for Summ. J. ("Gilliam Decl.") ¶ 9. It also notified Brave New Films that the Video had been removed in response to OTRN's letter. *See* Complaint, ex. E. On October 3, Brave New Films sent a DMCA counter-notice to YouTube, stating that the Video had been removed from YouTube in error. Gilliam Decl., ex. A. On October 10, Brave New Films filed this lawsuit against Savage and OTRN, (1) seeking a declaratory judgment that the Video does not infringe copyrights held by OTRN or Savage, and (2) alleging misrepresentation in violation of the DMCA, 17 U.S.C. § 512(f). YouTube restored the Video to the YouTube site on October 20. Gilliam Decl. ¶ 13.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

---

[3] The "DMCA" apparently refers to the Digital Millennium Copyright Act.

1  The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id*. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Brave New Films moves for summary adjudication of its claim for declaratory judgment and requests an injunction against defendants preventing them "from threatening legal action with respect to the Video against Brave New Films in the future." *See* Pl. Proposed Order. [Docket No. 41]

The Declaratory Judgment Act provides, in relevant part, "In a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The 'actual controversy' requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal jurisdiction over only 'cases and controversies.'" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007). In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court examined Article III's case or controversy requirement as it relates to the Declaratory Judgment Act:

> Our decisions have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from

4

> an opinion advising what the law would be upon a hypothetical state of facts. . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*See* 549 U.S. 118, 126 (2007) (internal quotations and citations omitted).

### A.  Declaratory Judgment Against Savage

Brave New Films contends that declaratory judgment against Savage is warranted because without this Court's determination that the Video's use of Savage's copyrighted broadcast is protected by the fair use doctrine, "Brave New Films will continue under a cloud of uncertainty and insecurity that at any time Savage can issue another takedown notice or file a lawsuit." Pl. Mot. at 8. Savage responds that declaratory judgment is improper because there is no "actual controversy" between Brave New Films and Savage, as required by the Declaratory Judgment Act. *See* 28 U.S.C. § 2201. That is, Savage maintains that he has not himself threatened legal action against Brave New Films in conjunction with the Video. Both defendants assert that while defendant OTRN owns the copyrights to most Michael Savage Show broadcasts – including, presumably, to the "content" used in 258 of the videos listed in the September 29, 2008 takedown letter – OTRN does *not* own the copyright to the October 29, 2007 broadcast. The copyright to that Michael Savage Show broadcast was, according to defendants, assigned by OTRN to Michael Savage.[4]

Under these circumstances, the Court agrees with Savage that Brave New Films has not demonstrated that it and Savage currently have "adverse legal interests." *See MedImmune*, 549 U.S. at 126. Brave New Films maintains that declaratory judgment is necessary because Savage may issue "another" takedown notice, but this contention assumes that Savage has sent a takedown letter in the past. As discussed in this Court's prior orders, there is a factual dispute as to whether OTRN acted as

---

[4] In the papers presently before the Court, no copy of or details about the assignment from OTRN to Savage are provided. The parties do, however, provide a copy of the U.S. Copyright Office's website registration record of the October 29, 2007 broadcast of The Michael Savage Show reflecting that Michael Weiner/Savage holds the copyright to this broadcast. *See* footnote 2, *supra.*

5

1 Savage's agent when it sent the September 29 letter.[5] *See* Docket Nos. 66, 81. Viewing the evidence in the light most favorable to Savage, the non-moving party, the Court must assume that Savage had no role in sending the September 29 letter. Brave New Films' second argument (that declaratory judgment is warranted because Savage might file a lawsuit, presumably for copyright infringement) also fails. Other than the September 29 letter, Brave New Films cites no evidence suggesting that Savage is interested in filing a lawsuit against Brave New Films in conjunction with the Video.

In sum, Savage's only connection to this lawsuit is through the September 29 letter and the parties disagree about whether Savage caused that letter to be sent. So long as the issue of Savage's involvement in the September 29 letter remains unresolved, there are disputed factual issues which preclude summary judgment.[6]

None of the cases relied on by Brave New Films is applicable here as they all involve situations in which the defendant had at least threatened to pursue legal remedies against the plaintiff. *See, e.g.*, *Vernor v. Autodesk, Inc.*, 555 F. Supp. 2d 1164, 1167 (W.D. Wash. 2008) (in the past, defendant had sent DMCA takedown notices regarding plaintiff's product to internet auction site eBay and defendant's attorney threatened to take further action against plaintiff if he continued to sell his product); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 966 (10th Cir. 1996) (defendant sent cease and desist letter and had history of suing other companies in similar situations). Here, Savage contends that he has never taken any action against Brave New Films with regard to the Video, other than to defend himself in this lawsuit.

For these reasons, the Court DENIES plaintiff's motion for summary adjudication of its claim

---

[5] Brave New Films argues in its reply brief that the case-or-controversy requirement is met as to Savage because the sender of the September 29 letter stated that it "represents the owner of an exclusive right infringed by" the 259 videos referenced in the letter; those videos include the Video, which contains content from the October 29 broadcast; and Savage owns the copyright to the October 29 broadcast. *See* Complaint, ex. C. Brave New Films' argument fails as it assumes that because the author of the September 29 letter stated that he represented the owner of a copyright infringed by the videos, the lawyer must have been acting with Savage's authority. This is precisely what Savage disputes.

[6] Plaintiff points out that while Savage asserts that he has not yet threatened legal action against Brave New Films, he does not state – either through counsel or through a declaration under oath – that he will not do so in the future. Whether Savage would be judicially estoppel from further legal action is a question for another day.

for declaratory judgment against Savage.

**2. Declaratory Judgment Against OTRN**

Brave New Films also seeks a judicial declaration against OTRN that the Video's use of the October 29 broadcast constitutes fair use. The Court finds that Brave New Films has not demonstrated that declaratory judgment is warranted. It is undisputed that Savage is the exclusive copyright holder of the October 29 broadcast. *See, e.g.*, Pl. Reply at 3:23-24. A declaration by this Court that Brave New Films' use of the October 29 broadcast is fair use would not "touch[] the legal relations of parties" because OTRN does not possess the copyright to this broadcast. *See MedImmune*, 549 U.S. at 126 (2007).

Brave New Films argues that OTRN's September 29 letter demonstrates that these parties dispute the legality of Brave New Films' use of the October 29 broadcast. OTRN responds that it does not dispute the legality of the Video and that it included the Video in its list of 259 purportedly infringing videos by mistake. *See* OTRN Opp. to Pl. Mot. for Summ. J. at 7:18. Brave New Films disputes whether the Video's inclusion in the September 29 letter was truly a mistake. However, the question of OTRN's intention in sending the letter, which is germane to the complaint's Second Claim for misrepresentation in violation of 17 U.S.C. § 512(f), does not change the fact that OTRN now asserts that it has no legal entitlement to assert a copyright infringement claim with regard to the Video.

Brave New Films attempts to analogize this case to *SanDisk Corp. v. STMicroelectronics, Inc.*, in which the Federal Circuit held that a case or controversy exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license," even though the patentee has not yet brought a suit for infringement. 480 F.3d 1372, 1381 (Fed. Cir. 2007). *SanDisk* is inapposite. Unlike the patent holder in *SanDisk*, OTRN does not hold the copyright at issue here. To the contrary, it is undisputed that OTRN has no grounds to file a suit for copyright infringement in conjunction with the Video.

In any event, even if OTRN had some legal basis for bringing an infringement claim against Brave New Films for its use of the October 29 broadcast, this circumstance would not necessarily

7

demonstrate that there is a live controversy between the parties. *See Lenz v. Universal Music Corp.*, 2008 WL 962102 *5 (N.D. Cal. 2008 Apr. 8, 2008) (finding case-or-controversy requirement not met when defendant sent takedown notice to YouTube, plaintiff sent counter-notice, defendant did not file an infringement action, and YouTube restored plaintiff's video to its site).

For these reasons, the Court DENIES plaintiff's motion for summary adjudication of its claim for declaratory judgment against OTRN.

## CONCLUSION

For the foregoing reasons, and for good cause shown, the Court hereby DENIES plaintiff's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: June 10, 2009

SUSAN ILLSTON
United States District Judge