**BENJAMIN SHAPIRO**
**LEGAL CONSULTING**

12330 MAGNOLIA BLVD., #114
VALLEY VILLAGE, CA 91607
PH: (818)620-0137
EMAIL: BSHAPIRO708@GMAIL.COM

July 27, 2009

**Via Electronic Filing and Hand Delivery**

Hon. Judge Susan Illston
United States District Judge
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *BNF 501(c)(4) v. Savage et. al.*
      Case No. CV 08-04703
      Response to Plaintiff Letter to Compel

Dear Judge Illston:

On July 20, 2009, Plaintiff BNF ("BNF" or "Plaintiff") filed a letter with the Court seeking the Court's assistance to obtain further discovery from Defendants The Original Talk Radio Network, Inc. ("OTRN") and Michael Weiner aka Michael Savage ("Savage", and together with OTRN, "Defendants").  However, such assistance is not warranted, as Defendants have produced documents and/or well-founded objections to Plaintiff's discovery requests.  While BNF claims that OTRN has "provided inadequate, boiler-plate responses to Interrogatories," and that Savage (1) "has produced no documents" and (2) "provided evasive, non-specific, boiler-plate objections to all Requests for Admissions and Interrogatories," each and every response by Defendants has been in good faith, and wholly truthful and well-founded, and Savage has in fact produced documents responsive to BNF's discovery requests.  BNF has provided no evidence to the contrary, making its statements completely *ad hominem* and baseless.

The conclusory contentions by BNF to the full and complete responses by Defendants to BNF's discovery requests are somewhat disingenuous, as there is not *a single* specific citation to any specific response that is purported to be defective to which Defendants can respond, or the Court can resolve, on the merits.  Instead, BNF relies on a one-sided overview of selected points which do not go to the merits of any specific requests or responses at issue.

BNF addresses long-standing discovery issues without acknowledging that these stem from specific fundamental disagreements over specific discovery requests.  BNF acknowledges production by OTRN of almost 1,500 pages of documents in response to this Court's order on the motion for a protective order by implying that OTRN should be criticized for only responding to the Court's order, and by suggesting that BNF's demand for additional further responses *outside the scope of the Court's order* somehow put OTRN and Savage under duties to respond as BNF demanded.  Because almost 1500 pages of documents concerning communications between Savage and OTRN were physically copied and sent to BNF by OTRN, BNF asserts that Savage sent nothing, as an attack on Savage, without addressing what purpose would be served by Savage sending another almost 1500 pages a second time.

BNF continues to treat the initial meet and confer with respect to its discovery as if it simply dealt with particular requests. Although this was a factor once the requests were issued, BNF ignores the fact that the basis for that meet and confer was BNF's failure to comply with its *obligation* to meet and confer with respect to a discovery plan before commencing discovery. Indeed, BNF notes OTRN's belief that dispositive motions to narrow or eliminate issues should occur prior to engaging in extensive discovery, and the March 11th request for the initial meet and confer and the citation to the initial Joint Case Management Conference Statement without noting that this was cited once Defendants realized that it did support their understanding that the parties had agreed to delay discovery until *after* further addressing the required discovery plan meet and confer.

Defendants' initial discovery responses were full and complete and consistent with their positions advanced in the initial meet and confer process. Subsequently, Defendants did agree to further meet and confers and to provide certain supplemental responses, not because they had not yet fully complied with their obligations (they had), but rather because they agreed to make certain compromises in an effort to resolve fundamental disagreements on discovery.

It is correct that various factors, including the serious illness and hospitalization of Mr. Severaid's mother (who has now recovered), have impacted the ability of counsel for Defendants to block out the numerous hours necessary to address the scope of BNF's discovery requests fully, and, as a result, Defendants did not complete the further process they agreed to undertake by the agreed target dates. However, BNF fails to note that those dates were initially set with the potential for deposition dates in late July or early August in mind, and that the stated urgency of target dates demanded by BNF lessened after BNF set depositions for the last week in August (i.e., further discovery propounded during the July 20 to July 27 time frame impacts deposition preparation far less once depositions have been set for the last week in August, rather than the last week in July or the first week in August).

In accordance with the representation by BNF that their letter motion to compel would be withdrawn upon receipt of further documents and privilege logs, Defendants have focused their time on providing the further productions to which they agreed in the meet and confer process, and are filing this reply, from an abundance of caution, after submitting further documents and responses, along with privilege logs (reduced in scope as to OTRN by documents it ultimately elected to waive privilege on and produce as a result of the meet and confer process).

## RELIEF REQUESTED

Defendants request this Court enter an order denying BNF's request that the Court compel Defendants to produce documents, responses, and privilege logs, since such materials have already been produced, and since there is no statement of any specific substantive objection or other response raised by BNF for Defendants to respond to, or the Court to resolve.

## FACTUAL AND PROCEDURAL BACKGROUND

This Action arises from a short video created and posted on YouTube by BNF entitled "Michael Savage Hates Muslims" (the "Video"). It is just over a minute in length and is composed almost entirely of excerpts from the October 29, 2007 broadcast of *The Michael Savage Show*, in contrast to a situation involving substantial independent commentary with incidental references to the material being commented on.

On September 29, 2008, Carter Glahn, as counsel for OTRN, sent a letter to YouTube demanding removal of 259 videos containing material from *The Michael Savage Show* (the "9/29/08 Letter"), without either the knowledge or permission of Savage. Contrary to the implications advanced by BNF, the Video was not the focus of the 9/29/08 Letter. Rather, the Video was accidentally included in the list of 259 videos which were the subject of that letter (as OTRN owns copyright to all broadcasts of "The Michael Savage Show" except for the 10/29/07 broadcast, which copyright was previously assigned to Savage). On October 10, 2008, without any prior warning to Defendants, BNF initiated this lawsuit, alleging, without a single shred of evidence, that OTRN's letter knowingly and materially misrepresented that the Video infringed content owned by OTRN, that Savage is liable under Section 512(f) under an agency theory, that OTRN acted on Savage's behalf in sending the letter, and that Savage authorized the sending of the letter.

At the Rule 26 conference held on January 14, Defendants stated that they intended to file summary judgment motions before discovery occurred. They reiterated this position at the January 23 Case Management Conference. On February 10, BNF served discovery on both Defendants. Responses were due on March 12. On February 19, counsel for Savage requested and was granted an extension on Savage's discovery responses until after this Court ruled on Savage's Motion to Dismiss. On March 11, Mr. Shapiro spoke with Sheila Pierce, counsel for Plaintiff, and requested an extension on the OTRN discovery, explaining that the initial Joint Case Management Statement confirmed that the Parties had stipulated to meet and confer prior to initiating any discovery in this case, and that the parties were in fact obligated to do so.

## Meet and Confer Process

BNF and Defendants repeatedly met and conferred in compliance with Civil L.R. 37-1. The first meet and confer occurred on March 17, 2009, at which time OTRN agreed to respond to written discovery by March 31 and to produce documents by April 10. The Parties agreed to enter into a stipulated Protective Order. In compliance with that agreement, OTRN provided good-faith and well-founded responses to BNF's Requests for Admissions and Interrogatories on March 31, 2009, and, on April 10, 2009, OTRN produced the one (significant) document it believed in good faith was responsive to BNF's non-objectionable requests for production.

In compliance with the March 17, 2009 meet and confer, on April 22, following the Court's April 15 denial of Savage's Motion to Dismiss, Savage fully complied with his discovery obligations by submitting full responses to BNF's discovery requests.

On April 24, 2009, counsel for the Parties met and conferred again in an attempt to resolve discovery issues, but BNF's counsel was adamant that Defendants produce thousands upon thousands of pages of irrelevant and objectionable documents over a period of years without any foundation in credible rationale as to relationship with the current Action. Based on BNF's intransigence with regard to narrowing its overbroad discovery requests, Defendants filed for a supplementary protective order; on May 18, 2009, as the order rejecting the full relief requested substantially narrowed the period for which production of documents was required. On May 21, BNF then demanded that Defendants satisfy other discovery requests, outside the scope of that order, to their satisfaction by June 1.

Between June 2 and June 7, OTRN produced nearly 1,500 pages of documents responsive to the Court's order (an extensive process – and as to which Defendants note the propensity of BNF to demand focus on collateral points, such as discovery issues outside the Court's order, during

periods in which Defendants are attempting to focus on an existing deadline in this Action).  On June 10, the Parties met and conferred again.  At that meet and confer, Defendants did agree to compromise certain of the discovery disputes in issue and to endeavor to provide supplemental responses by June 30.  At that time, BNF agreed to table its requests pertaining to the CAIR case, while reserving the issue for the future.  Due to unavoidable issues, Defendants were unable to complete the extremely time consuming tasks necessary to supplement by June 30.

On July 2, BNF demanded the supplemental production by close of business on July 6.  On July 6, counsel for Defendants advised that they would attempt to complete the supplementing by July 17.  On July 17, BNF advised Defendants that BNF would file a motion to compel that day, but that the letter would be withdrawn if Savage produced responses.

On July 20, Savage produced documents responsive to BNF's requests, a privilege log, and supplemental responses to the requests for production.  However, BNF did not withdraw its letter to compel once counsel for BNF returned to her office at the end of that week.

On July 23, BNF advised that in order for the letter to compel to be withdrawn, Savage would have to produce more documents as well as a more detailed privilege log.  On July 27, Savage produced a more detailed privilege log, and assured BNF that no more documents were within his possession that were responsive to BNF's discovery requests.

On July 27, OTRN produced a detailed privilege log, further documents pursuant to its agreement to supplement the prior productions, and supplemental responses to the requests for production of documents.  OTRN does note that it was agreed during meet and confer that the OTRN privilege log would accompany OTRN's supplemental production for the simple reason that OTRN agreed to consider producing certain privileged documents as one of the several discovery concessions it made in good faith in the meet and confer process.

Defendants have at all times acted in good faith to comply with unobjectionable requests from BNF, and to supplement certain responses notwithstanding valid objections.

## ARGUMENT

 "'[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries.'  Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)."  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).  BNF lists documents it speculates it has not received in certain areas.  However, the actual documents properly producible in response to the requests have been produced (or, as to the "relationship" documents, the documents within the scope of the Court's order).  Defendants submit that the principle problem BNF has with the discovery produced is its frustration that there are not in fact any documents pertaining to certain nonexistent facts it desires to show.  Defendants have satisfied their discovery obligations.

Denial of a motion to compel is proper where "it was clear that the evidence sought was almost certainly nonexistent or was the object of pure speculation."  *VISA International Service Asso. v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986).  The existence of further documents is baseless speculation and groundless hope on BNF's part, since the documentary record provides no evidence for their case, and, indeed, abundantly establishes the truth of the declarations submitted on behalf of the Defendants.  Moreover, BNF makes no showing at all to

support their speculation that there are more documents that should have been produced over and above the more than 1,500 pages of documents now produced to date.

BNF requests privilege logs under Rule 26(b)(5)(A). However, this issue is now moot, as Savage turned over a privilege log and a supplemented privilege log on July 20, 2009 and July 27, 2009, and on July 27, OTRN also produced a privilege log.

BNF suggests that OTRN must describe the content redacted in the documents it has already turned over "sufficient to enable BNF to assess the applicability of privilege." However, the *limited* redactions are based on multiple grounds and are placed in the context of large swaths of unredacted text, which enables BNF to assess the whether the redacted portions are indeed relevant. In addition, this Court's order with respect to the request for a protective order expressly authorizes significant portions of those redactions.

BNF further contends that attorney-client privilege is totally inapplicable for attorneys Benjamin Shapiro, Ronald H. Severaid, and Carter Glahn with regard to any communication with regard to OTRN. In support of this proposition, BNF cites to *Chevron Corp. v. Penzoil Co.*, 974 F. 2d 1156 (9th Cir. 1992), which states that "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.* at 1162. In this case, Defendants have raised no such claims, nor are Defendants aware of any case which stands for the proposition that the attorney-client privilege is wholly inapplicable whenever a party has taken certain actions through counsel or notes that it and its attorneys have acted in good faith. No privilege has been claimed as to true third party interaction by counsel for OTRN. Nevertheless, OTRN has, in the spirit of compromise, now produced the subject privileged documents, and there are no documents whatsoever between the OTRN attorneys that have not been turned over to BNF that deal with any claims (i.e., as to good faith) affirmatively raised by OTRN.

## CONCLUSION

Because all documents, privilege logs and responses have been produced in good faith and with well-founded bases, and because there is in any event no specific showing on any specific request, there is no reason for the Court to grant BNF's request to compel discovery. If the letter from BNF requesting an order to compel is not properly withdrawn, the requested relief should be denied.

Respectfully Submitted,

*/s/ Benjamin Shapiro*

Benjamin Shapiro, Esq.
Attorney for OTRN and Michael Weiner aka Michael Savage